# THE STATE v. ANSLINGER, Appellant.

### Division Two, February 3, 1903.

1. **Examination of Witnesses:** REWARD: CREDIBILITY: INFLUENCE ON TESTIMONY. Where a witness for the State is asked on cross-examination, with the view to affecting his credibility, if he is not out for a reward of $100 which has been promised for information leading to the conviction of persons charged with the crime for which defendant is being tried, it is proper for the State on redirect examination to inquire if the reward as offered in anywise affected his testimony.

2. **Instruction:** REWARD FOR INFORMATION: SPECIAL CAUTION. It is not incumbent upon the court to single out in its instructions particular facts, for instance, the weight to be given to the testimony of witnesses who may have been influenced in testifying by the fact that a reward has been offered for the conviction of defendant. The application and force and effect of such facts are fully and fairly presented by a general instruction as to the credibility of the witnesses, which specially directs the jury's attention to their right to take into consideration the interest of the witness, if any, in the result of the trial.

3. ———: GOOD CHARACTER: NO EVIDENCE. The statute which requires the court to include in its instructions, "whenever necessary," one on the subject of good character, does not mean that the court is required to give an instruction on that subject when there is no evidence on which to base it. If there is evidence on the subject of good character the court should give an instruction on that subject, whether asked or not, but if there is no evidence on the subject it is not error to fail to give such instruction.

4. **Good Character:** PURPOSE OF TESTIMONY. The reason for the rule which makes admissible testimony on the subject of the good character of a defendant in criminal cases, is that good character tends to lessen the probability of his guilt.

5. ———: LIMITATION OF TESTIMONY. The testimony offered on the subject of good character should be restricted to the traits of character which are involved in the charge. It is obviously irrelevant in the trial of one charged with frauds at an election to inquire if defendant is an honest, hard-working, industrious man, and if such is the only evidence on the subject of his good character there is no evidence on which to base an instruction on that subject.

6. Constitutional Law: SPECIAL AND GENERAL STATUTE ON SAME SUB-
JECT. Where there is a general and special law on the subject of
punishments for fraud at elections, the general law providing a cer-
tain punishment and the special law a different and higher punish-
ment for the same offense, the special law is unconstitutional, since
the "general law can be made applicable," and, therefore, under the
Constitution the Legislature was forbidden to enact such special
statute. And in such case it is error to try the defendant under
the special law, and if that is done the judgment will be reversed,
and the cause remanded so he may be tried under the general law.

7. ———: ———: ELECTION LAWS: PUNISHMENT. The general law,
applicable to the whole State, fixed the punishment for certain
frauds at an election at "imprisonment in the penitentiary not ex-
ceeding five years, or by imprisonment in the county jail not ex-
ceeding one year, or by a fine of not less than fifty dollars, or by
both such fine and imprisonment." A later special statute appli-
cable to the city of St. Louis only, fixed the punishment for the
same offense at "imprisonment in the penitentiary not less than
two years." Held, that the special statute is unconstitutional, and
one found guilty of the offense charged should be punished under
the general statute.

8. ———: CLASSIFICATION OF CITIES: 300,000 INHABITANTS: JUDICIAL
NOTICE. The courts will take judicial notice that a statute made
applicable to "cities of 300,000 inhabitants or over" applies only
to the city of St. Louis.

Appeal from St. Louis City Circuit Court.—*Hon. H. D.
Wood,* Judge.

REVERSED AND REMANDED.

*S. S. Bass, Jones, Jones & Hocker* and *A. H.
Roundebush* for appellant.

(1)   The court erred in failing to instruct the jury
as to good character of the defendant. R. S. 1899, sec.
2627, as amended by the Act of 1901, Laws 1901, p. 140;
State v. O'Connor, 31 Mo. 389; State v. Barth, 25 S. C.
175; United States v. Roundenbush, 1 Baldw. 514;
United States v. Gunnell, 5 Mackey 196; State v. Ed-
wards, 13 S. C. 30; Stewart v. State, 22 Ohio St. 477;
State v. Henry, 50 N. C. 65; Baker v. State, 53 N. J.
L. 45; People v. Hancock, 7 Utah 170; Long v. State,
23 Neb. 33; State v. Sauer, 38 Minn. 438; Johnson v.

State, 34 Neb. 257; Kilpatrick v. Com., 31 Pa. 198; Holland v. State, 131 Ind. 568. (2) In view of the testimony of the State's witnesses, Dutzi and Ahrenhoesterbaumer, the court should have given the jury a special instruction on the subject of the credibility of witnesses as effected by the hope of reward, and its failure to do so was error. State v. Rush, 95 Mo. 206; State v. Walker, 98 Mo. 113. (3) The jury is the sole judge of the credibility of witnesses, and the court erred in refusing to exclude questions which called for the opinion of witnesses on their own credibility. Billings v. St. Louis, 11 Mo. 357; State v. Anderson, 19 Mo. 241; State v. Gee, 85 Mo. 647; State v. Wilson, 143 Mo. 334. (4) The verdict by reason of the omission of the word "feloniously," is not responsive to the charge in the indictment, and will, therefore, not support a judgment. 22 Ency. Plead. and Prac., 873; State v. Robb, 90 Mo. 30; State v. Adam, 31 La. Ann. 717; People v. Perez, 87 Cal. 122; Gardes v. U. S. 87 Fed. Rep. 172; State v. Guillory, 42 La. Ann. 581.

*Edward C. Crow,* Attorney-General, for the State.

(1) The court committed no reversible error in failing to specifically instruct the jury as to the defendant's character. Error to be reversible must be prejudicial. If the evidence that the defendant committed the crime be direct and positive, his previous good character can not be looked to as ground of acquittal. 52 Mo. 251; 70 Mo. 546. (2) The words "whenever necessary" in the statute, must be given some force in this statute. The rule of construction is that a law will, if possible, be so construed as to give effect to all its parts. The words "whenever necessary" must, in the first place, be held to mean that some substantial evidence of good character must be first produced. It is the duty of the trial court to determine the question as to whether or not any competent evidence has been introduced tending to prove good character. An inspection of the record in this case will justify my suggestion that the state-

ments of the witnesses concerning the defendant's character, drawn out on cross-examination by the defendant's counsel, do not constitute the class of evidence on which the law intended an instruction for good character should be based.   The words "whenever necessary" mean whenever "legally necessary."   Is it legally necessary to instruct on good character when no substantial, positive evidence of good character has been given? The weight of the testimony of good character is, of course, for the jury, but the legal competency of it must be first passed upon by the court.   Does the evidence offered tend to legally prove good character?   If not, it surely can not be legally necessary to instruct on it.   The aim of the instruction is to assist the jury in arriving at a verdict.   (3)   It is but fair to the trial court that counsel for the defense should call attention to the particular class of instructions, at least in general terms, which it is claimed the trial court has by an oversight omitted from the instructions given, in order that the trial court might have an opportunity to know at least along what general lines it had erred.   Neither at the time the instructions were given, nor in the motion for a new trial, was the trial court's attention directed even in general terms to the instruction or class of instructions it was claimed to have omitted from those given.   But only the general allegation was made that the court had not instructed on all the law of the case. Even if it is true that a failure to instruct on all the law of the case, whether requested or not, in all cases where such omission occurs and a general objection is made, "shall be good cause for setting aside a verdict," does it follow that the motion for a new trial should not specify the character or class of instruction or instructions that have been omitted? The statute does not say that counsel shall be relieved in his motion for new trial of the duty of setting out specifically the legal grounds upon which he relies for a rehearing.

FOX, J.—At the April term, 1901, of the circuit court of the city of St. Louis, the defendant, Frank

Anslinger, was charged, by indictment duly presented by the grand jury at said term of court and filed June 19, 1901, with knowingly, willfully, fraudulently and feloniously voting in more than one election precinct, at a municipal election, in the city of St. Louis, on the first Tuesday in April, 1901. Defendant was duly arraigned and entered his plea of not guilty.

December 10, 1901, the defendant was tried, which trial resulted in a verdict of guilty, as charged, and his punishment assessed at two years' imprisonment in the penitentiary. In due time, defendant filed his motions for new trial and in arrest of judgment, both of which were by the court overruled, and appellant, in proper form, prosecuted his appeal to this court.

Upon the trial in this cause, in addition to the formal proof by the State of the scheme and charter of the city of St. Louis, providing for the election of city officers and the day upon which such elections are to be held, identification of registration and poll books, qualifications of the judges, etc., three judges of election, one clerk and challenger at precinct seven, in ward seven, identify the defendant as depositing his ballot at that precinct at the election for the election of city officers in the city of St. Louis on the first Tuesday in April, 1901. It is unnecessary to further refer to the testimony as to defendant's voting at precinct seven, for he admits on the stand, as a witness in his own behalf, that he cast the vote as charged at that precinct.

As to the charge that defendant voted at precinct four, ward eight, the testimony, as disclosed by the record, shows that two judges of election, one clerk and a challenger at precinct four, ward eight, positively identified the defendant and testify most clearly and convincingly that the defendant also cast his ballot, on the same day, at the same election, at precinct number four in ward eight.

In behalf of the defendant, two judges of the election at precinct four in ward eight, in said city election, testify that they do not remember of seeing defendant at precinct four, in ward eight, on the day of

election.  They recall the fact that some one voted under the name of Frank Anslinger, but say they can not identify the defendant in court as being that man.  They further state that there was, according to their best memory, some difference in the appearance of the man voting as Frank Anslinger and the defendant as he appeared in court at the trial.  They would not state, however, that the man voting as Anslinger was not the defendant.    There was evidence tending to prove a good reputation for defendant as a hard working, industrious man.

Defendant testified in his own behalf.  His testimony was an admission that he voted at precinct seven, ward seven, and an absolute, unqualified and positive denial of voting at precinct four in ward eight, and he further stated that he did not register in precinct four, and that the signature purporting to be his, in the book of registration of elections in the eighth ward, precinct four, was not in fact his.  This is substantially what the record discloses as to the facts in this cause.

It developed upon the cross-examination of witnesses for the State, that some of the citizens of the city of St. Louis had offered a reward of one hundred dollars to any person who would furnish information leading to the arrest and conviction of any person violating the election law of the city of St. Louis.  Counsel for appellant, upon cross-examination of the witness for the State, inquired of the witness if he was not out for this reward.  It is evident from the question propounded that its purpose was to affect the credibility of the witness.  It is urged that the court erred in permitting counsel for the State, upon re-direct examination, to inquire of the witness, if the reward as offered in any way influenced his testimony.  This contention must be ruled against the appellant.  The question was clearly competent and the answer of the witness was relevant, in view of the cross-examination of appellant's counsel.  It is a very common practice, and the instances are numerous, in which a witness, upon cross-examination, says he is unfriendly to the defend-

ant, and the State's counsel inquires of him, if such un-friendly feelings have any influence upon his testimony. The question in this case is analogous in principle, and there is but one opinion by the "Bench and Bar," and that is that the witness has a perfect right to say whether or not he was influenced in his testimony, by hope of reward or certain conditions of his feelings at the time he testifies.

It is next argued that, upon the testimony disclosed by the record as to the reward for information leading to the conviction of any person violating the election laws, the court should have cautioned the jury, by an appropriate instruction, as to the weight of the testi-mony of the witnesses to whom such testimony was ap-plicable. Under the well-settled law of this State, it is not incumbent upon the court to single out any par-ticular facts, and instruct the jury as to the application and the force and effect of such facts. The court, in this cause, very fully and fairly presented the questions for the consideration of the jury, as to the credibility of the witnesses and of the weight to be given their testimony, specially directing their attention to their right to take into consideration the interest of the wit-ness, if any, in the result of the trial. This instruction was all that was required upon that subject, and was certainly a fair and proper guide for the jury in con-sidering the interest of any witness to whom the testi-mony as to the reward might apply. In view of the con-clusions reached upon this question, we find no error in the court failing to give the instruction suggested.

Our attention was called in the oral argument by counsel for appellant to the failure of the court to in-struct the jury upon the good character of the defend-ant, and this omission of the court is urged as error. Section 2627, Revised Statutes 1899, as amended by Laws of 1901, page 140, substantially provides that it is the duty of the court, whether requested or not, to instruct the jury, in writing, upon all questions of law arising in the case, which are necessary for their infor-mation in giving their verdict, which instructions shall

include, whenever necessary, the subjects of good character and reasonable doubt. Instructions contemplate the guiding of the triers of the facts to a just result and we take it that the amendment of section 2627 referred to, does not intend to change the well-settled rule that instructions in both civil and criminal practice should be predicated upon the testimony in the cause. In the case of State v. Allen, 116 Mo. l. c. 555, GANTT, J., speaking for the court, says: "It is just as essential in criminal as in civil practice that there should be evidence upon which to base an instruction."

Evidence of good character is admissible in all criminal cases where the nature of the charge reflects upon the character of the person charged, and it is immaterial whether the guilt of the defendant is conclusive or doubtful. This is now the well-settled rule in this State. The provision of the statute which imposes the burden upon the trial court to include in its instructions, "when necessary, the subjects of good character and reasonable doubt," contemplates when there is testimony of good character in evidence, the court shall include it in its instruction. We take it the use of the terms "when necessary" does not mean that it is discretionary with the court to include in its instructions good character, when there is no evidence upon which to base the instruction; the province of the court is to guide the jury by proper instructions, upon the facts in proof, and not to consider the necessity of an instruction, which practically, if that rule should be adopted, would permit the court to determine whether the facts in proof were to have any effect upon the conclusion to be reached. The jury have the right to consider what influence the evidence of good character shall have in reaching their verdict and when testimony of good character is introduced, whether requested or not, it is the duty of the court to include it in its instructions.

This brings us to the vital question upon this error complained of by counsel for appellant. Did the testimony of the witnesses in this cause make it incumbent

upon the trial court to include in its instructions the subject of good character, or in other words, as provided by the statute, was it necessary for the information of the jury to instruct on the good character of the defendant? The correct answer to this question determines this point.

The testimony upon which appellant's counsel urge so earnestly that an instruction upon good character should have been based, was developed upon the cross-examination of two of the witnesses for the State.

Witness Meyer, after the formal questions of his acquaintance with the defendant and how long he had known him, was asked this question:

"Q. Are you acquainted with his general reputation down there for an honest, hard-working man? A. Yes."

"Q. Is it good or bad? A. His name is good as far as hard work is concerned."

To witness Weismiller, this question was propounded:

"Q. He is a hard-working, industrious man, isn't he? A. As far as I know."

This was the entire testimony upon the subject of good character of the defendant.

The same recognized authority that has guided the courts in nearly all of the States of this Union for so many years, in adhering closely to that now universally admitted correct doctrine of the admissibility of testimony of good character of defendant in a criminal prosecution, announces with equal clearness and unanswerable force of reasoning, the limitation to the rule governing the admission of such testimony. The reason for the rule of the admission of testimony of the good character of a defendant is, that it tends to lessen the probability of his guilt, hence, the testimony offered should be restricted to the traits of character which are involved in the charge. Greenleaf on Evidence (15 Ed.), volume 3, section 25, in treating of this subject, says: "The evidence, when admissible, ought to be restricted to the trait of character which is in issue; or, as it is else-

where expressed, ought to bear some analogy and reference to the nature of the charge; it being obviously irrelevant and absurd, on a charge of stealing, to inquire into the prisoner's loyalty; or, on a trial for treason, to inquire into his character for honesty.'' See also Phillips on Evidence; Best on Presumptions.

Measured by this rule, was there the slightest evidence upon the trait of character involved in the charge, which rendered it necessary for the information of the jury, to instruct upon the subject of good character? We think not. The trait of character involved in the charge against appellant was that of an honest and law-abiding citizen. A man may be industrious and still dishonest. He may work hard and still have no respect for law.

Our attention has been directed to that line of cases decided by this court, as to inquiry into any and all traits of character, upon the subject of impeachment of witnesses. It is unnecessary in this opinion to discuss the soundness of the doctrine announced in those cases; it will suffice to say that the principle is not analogous; in the one, the inquiry is to affect the credibility of the witness; in the other, it is to lessen the probability of the guilt of a defendant charged with a particular offense.

The testimony in this cause on the good character of the defendant did not render it necessary for the court to include in its instructions the subject of good character, and there was no error in its failure to do so.

Upon a careful inspection of this record, we find a most vital question, which challenges the attention of this court. The error complained of is properly preserved, by objections and exceptions at the time, to the action of the trial court. It is therefore incumbent upon us to dispose of it. The indictment in this cause is predicated upon the violation of one of the subdivisions of section 7261, Revised Statutes 1899, which provides that any person who shall knowingly, willfully or fraudulently vote in more than one election precinct, shall,

Vol 171 mo—39.

upon conviction, be guilty of a felony and punished for every such offense by imprisonment in the penitentiary not less than two years.   This section has application alone to cities with three hundred thousand inhabitants or over.   It applies alone to the city of St. Louis, for, as was said by BLACK, J., in the case of State ex rel. Attorney-General v. Miller, 100 Mo. l. c. 450: "We must take judicial knowledge of the fact that there is but one city in this State having, at this time, a population of over three hundred thousand inhabitants, and that is the city of St. Louis."

Section 2114, Revised Statutes 1899, is a general statute enacted many years prior to section 7261, supra. Section 2114 provides: "Every person who shall, at any election held in pursuance of the laws of this State, or of any city or other municipality thereof, vote more than once, either at the same or a different place, . . . shall be deemed guilty of a felony, and upon conviction shall be punished by imprisonment in the penitentiary not exceeding five years, or by imprisonment in the county jail not exceeding one year, or by a fine of not less than fifty dollars, or by both such fine and imprisonment."

These two sections clearly create the same offense, the only difference being that section 2114 uses the words "vote more than once at the same or a different place," while section 7261 uses the words "vote in more than one election precinct." *Precinct,* as used in section 7261, can mean nothing more nor less than the place of voting.   In fact, an indictment under section 2114, Revised Statutes 1899, in which the term *place* is used, would very properly charge the places of voting more than once as being election precincts.

We take it beyond question that the respective subdivisions alluded to  create the same identical offense. It will be observed that section 2114, the general statute, applies equally to the city of St. Louis and every other county and subdivision of the State.   The offense as created by the general statute fixes the punishment at imprisonment in the penitentiary not exceeding five

years or by fine and imprisonment in the county jail. The offense as created under section 7261, Revised Statutes 1899, is punishable by imprisonment in the penitentiary for a term not less than two years.

Here we are confronted with the proposition of an offense committed in the city of St. Louis, being punishable by imprisonment in the penitentiary for not less than two years, which may extend to life imprisonment. On the other hand, the same offense committed in any county or other subdivision of the State, is punishable by imprisonment in the penitentiary for a term not exceeding five years, or may be punished by fine or imprisonment in the county jail or both such fine and imprisonment.

Section 53, article 4, of the Constitution of Missouri, in one of its subdivisions, provides: "In all other cases where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject.   Nor shall the General Assembly indirectly enact such special or local law by the partial repeal of a general law."

If section 7261, Revised Statutes 1899, is to be construed as the general law in force, and all persons voting at more than one election precinct are to be prosecuted in pursuance of the provisions of that section, it must be upon the theory that section 7261 repeals that portion of section 2114, which creates and provides for the punishment of such offense.

If section 7261 repeals section 2114, as far as it creates and provides for the punishment of persons voting at more than one place, then all other subdivisions of the State not having the required population would be absolutely powerless to punish persons for the offense as charged in this indictment, but if it be said that it simply repeals that portion of section 2114, Revised Statutes 1899, applicable to the city of St. Louis, then clearly it would be in violation of the provision of

the Constitution prohibiting the General Assembly from indirectly enacting such special or local law, partially repealing a general law. It will not settle this question to say that section 7261 is a general law; as has been truly said elsewhere, "the mere form of an act of the Legislature will not determine its constitutional character; that will be determined by its operation."

Section 2114, Revised Statutes 1899, is a general law applicable to the entire State and the defendant can be punished under its provisions.

"Where a general law can be made applicable, no local or special law shall be enacted," so says the Constitution. The general law creating this offense not only can be made applicable, but has been applied for many, many years prior to the enactment of section 7261. It is useless to pursue this investigation further, in view of the able and exhaustive opinion by Sherwood, J., in the late case of Henderson v. Koenig, 168 Mo. 356. This opinion is not only concurred in by all the judges in Division Two, but is adopted as the opinion of the court in banc. While that was a civil case involving a change of the general law in respect to fees of probate judges, yet in principle some of the vital questions involved in that case were on all-fours with this. In that case, all of the authorities are reviewed and the conclusion reached that a law, even though general in form but special in its operation, could not be adopted by the Legislature in violation of the Constitution prohibiting such legislation.

The court, in the trial of this case, fixes the punishment under the provisions of section 7261, Revised Statutes 1899, instead of section 2114, the general law of the State. We have reached the conclusion that this was error. The General Assembly has no power to make an offense punishable in the city of St. Louis greater than in other subdivisions of the State, for the same offense.

The offense of voting at more than one election precinct in the city of St. Louis is no greater than voting at more than one election precinct in the most humble

village in the State. The offense is not against the peace and dignity of the people of the city of St. Louis, but against the peace and dignity of the entire State. The offense is not against the people of any particular locality, but contemplates an injury to the entire people of the State by the violation of the provisions of its general law.

The defendant had the right to be tried under section 2114, Revised Statutes 1899, and the court should have, by proper instruction, declared the punishment in pursuance of its provisions.

For this failure, this judgment will be reversed and the cause remanded. All concur.