STATE of Missouri, Respondent,

v.

Augustus ROBERTS, Appellant.

No. 56262.

Missouri Court of Appeals,
Eastern District,
Division Five.

Jan. 16, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 14, 1990.

Application to Transfer Denied
April 17, 1990.

Deborah B. Wafer, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Andrea K. Spillars, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Judge.

Defendant appeals his convictions for murder second degree, § 565.021, and armed criminal action, § 571.015, RSMo 1986. Defendant received sentences of thirty and sixty years for the respective crimes to be served concurrently. We affirm.

On the evening of February 29, 1988, appellant and his girl friend, Jewel Bass, became involved in a heated argument at the apartment they shared. Both parties were intoxicated. Ms. Bass informed appellant she was going to get a new boyfriend. Appellant became enraged and stabbed Ms. Bass eleven times with his pocketknife. Appellant then left the apartment to telephone his sister, informing her that he was afraid he had hurt Jewel badly. His sister advised him to return to the apartment, check on Ms. Bass's condition and call the police and an ambulance. Appellant returned to the apartment and checked Ms. Bass's wrist for a pulse. Unable to find one, he again left the apartment and telephoned Eva Willis. He asked Ms. Willis to meet him at a downtown location and to bring beer and cigarettes.

Ms. Willis and appellant walked and drank until they came to the Fourth District Police Station where appellant presented himself to the officer at the desk, stating that he thought he had hurt his girl friend. The officer told him to leave. Appellant left, then returned. Seeing that appellant was becoming agitated and creating a disturbance, the officer called for assistance.

Officer Robinson responded and took appellant by the arm to escort him to a report room with the intention of calming appellant down. On the way, Officer Robinson asked appellant "what was the problem" and appellant responded that he had just killed his girl friend. Upon reaching the room, Officer Robinson conducted a patdown search of appellant to determine if he was carrying a weapon. He first felt, then removed, a knife from appellant's pants pocket. This pocket knife appeared to have blood on it. The officer also noticed a blood spot on the pants. Both blood samples were later determined to belong to Ms. Bass.

Appellant then offered his keys to Officer Robinson and asked him to check in his apartment to see what he had done. Officer Robinson asked for the apartment number, then gave the keys to Lieutenant Moore. While Lieutenant Moore was

present in the room, appellant again stated he had hurt his girl friend. Officer Robinson remained with appellant while other officers examined the apartment. Upon arriving at the apartment, the police discovered the body of Jewel Bass seated upon a couch. Paramedics were called, but were unable to revive her.

Once the police discovered that a murder had been committed, appellant was transferred to the Homicide Division where Detective Banaszek attempted to interview him. When the detective arrived at the interview room, appellant was exceptionally agitated and kept insisting that he did not deserve to live. Appellant requested that the police officers shoot him. After approximately half an hour or forty-five minutes, Detective Banaszek was able to calm down appellant and then read him his *Miranda* rights. At this point, an interview was conducted and appellant related the events surrounding the killing. When asked if he would like to make a recorded statement, appellant requested an attorney. After speaking to a public defender, appellant declined to comment further.

Appellant was charged with murder first degree and armed criminal action. At trial, he pleaded not guilty and claimed that he blacked out after Ms. Bass stated she would find a new boy friend and slapped him. He said he did not remember stabbing her, but gave an account of the other events of the evening. The jury found appellant guilty of murder second degree and armed criminal action.

Appellant's first two points on appeal concern claims of error with the trial court's ruling on two motions to suppress: a motion to suppress statements made by appellant to the police and a motion to suppress the pocket knife and bloodstained pants. The trial judge conducted a pre-trial hearing on both motions during which Officers Robinson and Banaszek testified. The judge denied both motions.

Appellant's first point on appeal claims the trial court erred in admitting the testimony of Officers Robinson, Moore, and Banaszek concerning incriminating statements appellant made. He claims no probable cause for arrest existed when Officer Robinson escorted him to the report room and that he was in custody at that time. Thus, appellant argues all evidence subsequently elicited was tainted. Appellant further states that even if this were not true, the *Miranda* warnings were given so late as to be meaningless, again tainting all evidence.

Appellant's argument ignores the following language in *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966):

> Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.... There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime.... Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

The Eleventh Circuit Court of Appeals utilized this language to affirm a conviction in *Sullivan v. Alabama*, 666 F.2d 478 (11th Cir.1982). In that case, the obviously upset defendant voluntarily entered the county jail mumbling that he had done something "terrible." Unable to elicit any coherent information, the front desk officer called another officer who took defendant into his office and engaged him in general conversation. The defendant then asked the detective to lock him up. The detective asked further questions, causing defendant to disclose facts about his personal life and to make the statement that something had happened to his ex-wife. At this point, the officer gave defendant his *Miranda* rights, but did not ask him to sign a waiver or ask him if he understood his rights. Defendant then gave a full account of the murder. Other police officers "kept an eye on" defendant while the questioning officer left to investigate the crime scene. Defendant was subsequently arrested.

The appellate court noted that there was no error in admitting the pre-*Miranda* statements because they were voluntary and thus *Miranda* did not apply. *Id.* 384 U.S. at 482, 86 S.Ct. at 1632. Similarly,

*Miranda* did not apply to the statements made in the office because they "were voluntary and not the product of a custodial interrogation." *Id.* The court characterized the initial questioning as "merely an attempt to investigate and probe the situation" and stated that the defendant remained at the station of his own accord and freely answered the questions. *Id.* The statements made after the incomplete *Miranda* warning were likewise admissible because no custodial interrogation ever materialized so there was no need for a *Miranda* warning. *Id.* at 483, 86 S.Ct. at 1632.

 In the case at bar, all of appellant's statements prior to the *Miranda* warning were clearly voluntary and thus admissible. In addition, the inquiry prior to appellant's transfer to the Homicide Division was, as in *Sullivan,* merely an attempt to investigate the situation. The *Miranda* warning came before any custodial interrogation began and thus was not given too late. The fact that appellant was in the homicide interview room for up to forty-five minutes prior to the warning does not invalidate the subsequent confession since it came before the custodial interrogation and because the time was spent in calming appellant to a state of mind where he could understand the warnings and make a coherent statement. We also note that appellant's testimony at trial was very similar to the objected statements. Consequently, any error in admitting the officers' statements was cured by defendant's confirmation of the statements. *State v. Tettamble,* 720 S.W.2d 741, 743 (Mo.App.1986).

Appellant's second point is that the court erred in admitting the knife and bloodstained clothing into evidence because the items were the fruit of an illegal detention. He claims the search of his person was unjustified because there was no probable cause to arrest him. The trial court indicated it would allow the knife into evidence because the body search was conducted for officer safety as authorized in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*Terry* provides that an officer may search a person he has probable cause to arrest if he has a reasonable belief that the person may be armed and dangerous and that his safety or that of others is in danger. *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883. The scope of such a search is limited to an attempt to discover hidden weapons. *Id.* The courts have recognized the need for police officers investigating a suspicious person "at close range" to protect themselves and others by determining if the person is carrying a weapon. *State v. Sandusky,* 761 S.W.2d 710, 713 (Mo.App. 1988) quoting *Terry v. Ohio,* 392 U.S. at 24, 88 S.Ct. at 1881.

 Appellant's rationale to rebut this theory is that there was no evidence the police believed appellant was armed and dangerous. In fact, Officer Robinson testified at the suppression hearing: "immediately, for my own safety, I conducted a pat-down search of the subject." When an officer is placed alone in a room with an upset, intoxicated person who claims to have just committed murder, this is a reasonable precaution. Thus, the fact that the search for weapons was not conducted pursuant to arrest is irrelevant.

Appellant offers no reason that the trial court erred in admitting the clothes, which were in plain view and were not taken until after appellant had been arrested. We assume the point is abandoned as to this evidence.

Appellant's third point relied on claims the trial court erred in admitting photographs of the victim into evidence. State's exhibits 17 to 22, taken at the scene of the crime, and exhibit 23, taken during the autopsy, were objected to at trial. Appellant also claims plain error regarding exhibits 24 and 26, also autopsy photographs. The reasoning presented in appellant's argument is that exhibit 25, which shows most of victim's wounds, combined with the medical examiner's testimony was ample evidence and that admitting the other cumulative, gruesome photographs was unnecessary.

 The trial court has broad discretion regarding admission of photographs;

"Photographs, although gruesome, may be admitted where they show the nature and location of wounds, where they enable the jury to better understand the testimony, and where they aid in establishing any element of the state's case." *State v. Murray,* 744 S.W.2d 762, 772 (Mo. banc 1988) *cert. denied,* —— U.S. ——, 109 S.Ct. 181, 102 L.Ed.2d 150. In many criminal cases, the relevant photographs will necessarily be gruesome because that is the nature of the crime committed. *State v. Chew,* 740 S.W.2d 715, 717 (Mo.App.1987). Such photographs should not be excluded unless they are unusually inflammatory, and where the photographs are what would be expected as an accurate representation of a person who had died in the relevant manner, that standard is not met. *State v. Murray,* 744 S.W.2d at 772. Also, the existence of oral testimony which describes what the photographs show is no reason to exclude the photographs. *Id.*

■ In the case at bar, as the trial judge observed, the autopsy pictures do not show identical views of all the wounds and thus are not cumulative. The different views of the different wounds are relevant to show the element of deliberation. The fact that the medical examiner also testified to these different wounds is immaterial. Similarly, the photographs of the body at the scene also show the elements of deliberation and show the condition in which appellant left the body. Although admittedly gruesome, these photographs are no worse than any photograph of a multiple stab wound victim. The trial court did not abuse its discretion in allowing the photographs into evidence.

Appellant's final point on appeal claims the trial court erred in refusing to allow two character witnesses to testify at trial because they were familiar with appellant's reputation in the community for relevant character traits. Pursuant to the prosecutor's claim that these witnesses could only give a personal opinion of character, rather than testify as to reputation, the court allowed an in-chambers examination of both witnesses.

Mr. Fujiwara testified that he had known Mr. Roberts when both men worked at Ralston Purina, but never knew him socially and had not seen or spoken to him in the last eight years. In addition, he had never heard any discussion of Mr. Roberts' reputation for being a peaceable person and had only discussed Mr. Roberts performance at work. The judge refused to let Mr. Fujiwara testify, apparently based on the prosecutor's claim that it was clear he could not testify as to reputation.

Mr. Hamilton also knew appellant from Ralston Purina and had socialized with him, but had not spoken to him for eight years. Mr. Hamilton testified that the men in appellant's department had discussed how he could hold his temper, but later explained this just meant he kept to himself. Mr. Hamilton also stated that he knew of no reputation for appellant being peaceable or not peaceable. The judge refused to let Mr. Hamilton testify, citing the fact that he only knew appellant's reputation at work and only knew his reputation eight years ago. He stated that "someone's behavior could change radically in eight years and their reputation in the community could change."

■ The trial court has broad discretion in admitting or excluding evidence and an appellate court will not interfere with such a ruling absent a clear abuse of discretion. *State v. Ferguson,* 727 S.W.2d 204, 207 (Mo.App.1987). A criminal defendant may offer reputation evidence of personality traits pertinent to the charged crime. *State v. Bolen,* 731 S.W.2d 453, 461 (Mo.App.1987). In many cases, a witness's testimony that he has never heard anything against the defendant's character will be the most cogent evidence of good character. *State v. Mosely,* 705 S.W.2d 613, 616 (Mo.App.1986). However, evidence of reputation must relate "to the time when the crime was committed or to a reasonable period prior thereto." *Brown v. Haynes,* 385 F.Supp. 285, 295 (E.D.Mo.1974).

■ In the case at bar, neither Mr. Hamilton nor Mr. Fujiwara had any knowledge of appellant's reputation for the past eight years. The court had discretion to find

that they did not know his reputation for a reasonable period prior to the crime. The case appellant cites to rebut this rule of law, *State v. Jackson*, 373 S.W.2d 4, 8 (Mo.1963), is inappropriate since the reputation witness there had known the defendant the full fourteen or fifteen years prior to the crime.

Appellant's conviction is affirmed.

SIMON, C.J., and SIMEONE, Senior Judge, concur.