STATE of Missouri, Respondent,

v.

Matthew **MOOREHEAD**, Appellant.

No. 58611.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 11, 1991.

Melinda Kay Pendergraph, Henry B. Robertson, St. Louis, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Matthew Moorehead, approached the victim, a homeless woman, on June 17, 1989, at the corner of Olive and Tucker in the City of St. Louis. Appellant sat down next to the victim at a bus stop and appellant asked the victim whether she could help him gain entrance into Christ's Church to see his wife and kids. The victim said that she could not help him and walked away.

Appellant caught up to her near the Soldiers' Memorial, grabbed her by the arm and pulled her up the steps of the memorial where she fell and hit her head on one of the steps. Appellant offered the victim money in exchange for sex and, when the victim refused, appellant raped her.

Mr. Herbert Gladney, also a homeless person, walked by the memorial during the incident. Mr. Gladney approached appellant and the victim and asked the victim whether she was all right. The victim told him that she was being raped and the appellant advised Mr. Gladney to leave since it wasn't Mr. Gladney's business. Mr. Gladney phoned 911 and reported the rape.

The appellant was later arrested and charged with rape. Appellant was tried by a jury on April 2 through April 5, 1990, and the jury convicted appellant of rape. Appellant was sentenced to seventeen years imprisonment, from which he brings this appeal. Appellant's six points relied on will be addressed in the order in which they appear in appellant's brief.

■ Appellant first claims that the court erred in not allowing him to introduce the victim's medical records in order to impeach the victim's testimony and to bolster appellant's claim that the victim consented to intercourse. Appellant bases his argument on the confrontation clause of the constitution.

Appellant does not dispute that the medical records which he sought to introduce were protected from disclosure by the physician/client privilege. Rather, appellant claims that the privilege must yield, in this case, to his Sixth Amendment right to confront the witnesses against him.

A fundamental interest secured by the confrontation clause is a defendant's right of cross-examination. *State v. Russell,* 625 S.W.2d 138, 140 (Mo. banc 1981). This right of confrontation encompasses the right to cross-examine a witness to determine the accuracy of his/her testimony. *Id.* at 141. It is error for the court to unduly restrict the accused's right to cross-examine a witness regarding relevant and material matters. *Id.*

Measured against the above standards, it was certainly true that the credibility of the victim was relevant and material to appellant's defense of consent. The victim suffered from various delusions which included her claims that she was in daily contact with U.F.O.s, that she worked for the British Royal Air Corps, that she had given birth to test tube babies and that she had an appointment with the Queen of England to be knighted. It is fair to say that the victim was not always firmly planted in reality.

It is also fair to point out that the victim's delusions and her strays from reality were in evidence. The trial court did not prohibit the appellant from using the entire victim's medical records, but limited their use to impeachment of the victim. The victim's records were referenced by appellant's counsel to impeach the victim's denial that she had been diagnosed as having a psychotic disorder which prevented her from being aware of what was going on around her. Additionally, the appellant was allowed to read the following excerpt from the victim's discharge summary from the Missouri Department of Mental Health:

Identification data. This is a fifty-five year old divorced, unemployed white female brought for admission by the police with petitions stating that she was trying to leave for London at the airport thinking that she'd been knighted by Queen Elizabeth.

This is the first admission for this patient to Malcolm Bliss Mental Health Center and she signed in voluntarily for admission.

Chief complaint in presenting problems. The patient stated, "I don't know

why they brought me here." The patient had been taken to the airport by a cab driver and she wanted to take a plane to England. She thought the ticket was being paid for by Queen Elizabeth. She was carrying many bags of clothing and she could not pay the cab driver. However, she stated that she was working for the Royal Air Force and that she was in the Secret Service and she was making $4,000 per month. She said she was a second lieutenant. She also claimed to have test tube babies. The petition drawn by Walter Clous at Lambert Airport said the patient came to the airport by cab to take a plane. She did not have the money to pay for the cab. Her speech was rambling and she did not seem to know what was going on around her and she was brought to Malcolm Bliss for admission and evaluation as an in-patient.

Our review of the record reveals that the trial court properly recognized the existence of the privilege and appropriately limited the appellant's use of the victim's medical records for impeachment. The appellant was able to effectively cross-examine the victim and to bring before the jury the victim's unstable mental state. The scope and extent of cross-examination is delegated to the sound discretion of the trial court. *State v. Hyde*, 735 S.W.2d 746, 747 (Mo.App., E.D.1987). The trial court did not abuse its discretion.

■ Appellant's second claim of error concerns the trial court's admission of the audio-tape of the 911 telephone call placed by Mr. Gladney the night of the incident. Mr. Gladney testified at trial to the details of the phone call and the State, later during Mr. Gladney's testimony, introduced the audio-tape of the call into evidence.

*State v. Seever*, 733 S.W.2d 438 (Mo. banc 1987) established that where a witness testifies from the stand, the use of duplicative and corroborative extra-judicial statements is substantially restricted. *Seever*, 733 S.W.2d at 441. In *Seever*, a videotape of the victim in a child sexual abuse trial was played for the jury in addition to the live testimony of the victim. *Id.*

at 439. The court, in reversing the defendant's conviction, stated that it would not be proper to read a witness's consistent deposition testimony, before or after the witness testifies at trial, since it tends to give an unfair advantage to the offering party. *Id.* at 441. In the case at bar, the 911 tape clearly fits within the prohibition of *Seever*.

However, our Supreme Court, en banc in *State v. McMillin*, 783 S.W.2d 82 (Mo. banc 1990), held that, in cases where the extrajudicial statement adds nothing substantial and the witness is available for cross-examination, the admission of the extra-judicial statement may be harmless error. *McMillin*, 783 S.W.2d at 98. In *McMillin*, the State introduced a small portion of a witness's statement to the police and introduced an audio-tape and transcript of a police interview of another witness. *Id.* at 98–99. In rejecting the appellant's *Seever* claim, the court found that, even assuming that both witness's testimony was improperly bolstered, any error was harmless since both witnesses testified and there was strong evidence of guilt without the extra-judicial statements. *Id.* at 98–99.

Likewise, in the case at bar, the tape recording offered nothing in evidence which had not been previously established. The recording itself was short in duration (see *State v. Brigman*, 784 S.W.2d 217, 220–21 (Mo.App., W.D.1989)) and the witness, Mr. Gladney, testified at trial. Assuming that the 911 tape improperly bolstered the witness's testimony, its admission was not prejudicial and, therefore, harmless. Point denied.

■ Appellant next appeals the trial court's finding that appellant failed to present a prima facie case under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson* prohibits the State from peremptorily challenging a juror based solely on the account of race. In the case at bar, appellant is black, the victim is white, the police officers who testified are white and the eyewitness, Mr. Gladney, is black.

The State exercised four of its six peremptories to strike black venirepersons and

struck a black alternate juror. After the State made its strikes, appellant interposed his *Batson* challenge. The court, without invitation, provided neutral explanations for three of the State's peremptories and the State offered its explanations regarding the other two. The appellant did not attempt to refute any of the reasons propounded by the court or the State.

In the case at bar, many factors are present which support the trial court's failure to find that a prima facie case had been established. First, neutral explanations for each strike were elicited. Appellant's claim that the court should not have supplied the State's reasons is precatory. While we agree that the court would be better advised to allow the State to propound its neutral reasons, in this case, it is clear to this court that the court supplied neutral explanations for the three most obvious strikes.

Venireperson Davis had stated that her brother was serving a twenty-five year sentence for murder. Venireperson Vasser stated on voir dire that he thought that some type of physical force needed to be applied in order for a woman to be raped. Venireperson White stated that she had been charged with misdemeanor shoplifting and was very secretive regarding the disposition of her case. We note, again, that the appellant did not challenge the above explanations nor object to the fact that the court, rather than the State, supplied them.

■ The prosecutor then indicated that he tried to strike the youngest female members of the panel since his experience taught him that they have not been the best jurors for the State on rape cases. Therefore, he struck Venireperson Council and Hart, two of the youngest female members. Venireperson Hart was black, Venireperson Council was white.

Regarding the alternate juror, the prosecutor explained that Venireperson Majneric, a white male, was the oldest of the three and had served on a criminal jury. Venireperson Johnson, a white male, had been a victim of crime and was older than Venireperson Holt, a black female. Therefore, of the three, the prosecutor decided that the young female, Venireperson Holt, was who he would strike.

There are other factors which also support the court's determination. Here, the State did not use all of its peremptory strikes to remove black jurors. *State v. Griffin*, 756 S.W.2d 475, 482 (Mo. banc 1988). The percentage of blacks on the venire, thirty-eight percent, compares favorably to the percentage on the petit jury, thirty-three and one-third percent. *State v. Hunter*, 802 S.W.2d 201, 204 (Mo.App., E.D.1991). There were, in our case, similarly situated white jurors who were removed from the jury. *State v. Brown*, 747 S.W.2d 261, 264 (Mo.App., E.D.1988). Lastly, we point out that a review of the voir dire does not reveal that the State made any comments or asked any questions which indicated a mind to discriminate. *State v. Jones*, 747 S.W.2d 229, 231 (Mo.App., E.D.1988).

We find that the trial court was not clearly erroneous in finding that a prima facie case under *Batson v. Kentucky* was not present. Point denied.

■ Appellant next asserts that the trial court erred in overruling his objection to the prosecutor's comments during the State's opening statement which indicated what appellant would say regarding the incident since this reference encroached upon appellant's right to not testify at trial. Appellant did not testify at trial. The portion of the State's opening argument to which appellant objects is as follows:

Mr. Matthew Moorehead after he was arrested and when he was interviewed by the sex crimes detective he had an explanation for what he had done to Aurelia Ackman, and his explanation to the detective you will learn is as follows. He said that he offered—that the victim was at the shelter, at the little bus stop at Olive, and that he offered her ten dollars for some quote, and excuse the word, but it was the word he used, pussy. He says he struck up a conversation with her and eventually she agreed—eventually he asked her would she be willing to have sex with him for ten dollars and he said

she agreed. And he says that she and he then walked together over to Soldiers' Memorial so that they could have more privacy. *He'll say that once they were concealed from view behind the wall—*

\* \* \* \* \* \*

He says that they then walked behind a concrete wall and some tall bushes on the north side of the Memorial. Once they were concealed from view behind the wall that they removed all their clothing and laid down on the ground. You'll learn from Officer Johnson that his memory is that she had her slacks off and so did Moorehead, that he had his down and around his ankles, and that after he pulled him off of the victim that Moorehead pulled up his pants.

(emphasis added).

The State's response at trial and now on appeal is that the above constitutes a portion of the State's proof at trial. The record bears this out.

At trial, Detective Mark Chambers testified on behalf of the State regarding the statements that appellant made to the police about the incident. Detective Chambers indicated that the appellant told him that he requested sex from the victim, she agreed to oblige in exchange for ten dollars, that they decided to go to the Soldier's Memorial for privacy and that, when they were behind a wall, they both took off their clothes and engaged in consensual sex.

The Detective's testimony virtually mirrored the prosecutor's statements to the jury during opening statement. The State's use of the phrase "[h]e'll say that once they were concealed from view," which prompted the appellant's objection, could be interpreted as a direct reference to testimony by the appellant. It could also refer to the Detective's testimony regarding what happened after the appellant and victim were concealed from view.

This ambiguous reference was incidental and, given the fact that the prosecutor was clearly referring throughout the quoted portion of the transcript to the Detective's testimony and given the fact that the reference does not state that the appellant would be testifying at trial, we find no error in the court's denying appellant's objection.

■ Appellant's fifth claim of error regards the appellant's post-Miranda silence in response to a question by Detective Chambers. Appellant did not properly object to the inquiry at trial but we will address appellant's point on appeal for plain error. Rule 30.20.

After appellant's arrest, he was taken to the police station and interrogated by Detective Chambers. Appellant was advised of his Miranda warnings and voluntarily gave Detective Chambers an oral statement. Detective Chambers then asked the appellant if he would like to make a written statement and appellant stated that he would not want to make a written statement.

Appellant was then escorted by the Detective to the booking area where the appellant's possessions were then inventoried. When the Detective noticed that appellant only possessed twenty-two cents, he stated "[i]t's kind of funny you offering somebody ten dollars for some sex and you only got twenty-two cents on you." The Detective was allowed at trial to state that the appellant did not respond to the Detective's observation.

Appellant claims that this constituted an impermissible use of appellant's post-arrest silence after appellant had invoked his right to remain silent. However, the record before us shows only that appellant, after waiving his right to remain silent in giving an oral statement, decided not to reduce his statement to writing. He did not assert that he wished to exercise his right to remain silent nor did he ask to consult with an attorney before making any further statements. Appellant's refusal to make a written statement, without more, was not an invocation of his right to remain silent (see *Connecticut v. Barrett*, 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987)) and, therefore, the admission of his silence in response to the Detective's subsequent observation was not error, plain or otherwise.

Appellant's last claim of error concerns the trial court's allowing the jurors, during their deliberations, to walk to the Soldier's Memorial in order to view the scene of the crime. Included within this argument is the claim that the prosecutor improperly invited the jury during closing argument to ask the court during the jury's deliberation for permission to view the memorial. Such an invitation is clearly objectionable (*Kirst v. Clarkson Construction Co.*, 395 S.W.2d 487, 500 (Mo.App., Spfld. Ct.App., 1965)), yet no objection was lodged by appellant in our case. We will not entertain appellant's request that we hold the court in error for not remedying the prosecutor's ill-advised statement, sua sponte.

However, at about 11:50 a.m. during the jury's deliberations, the jury asked permission to go to the Soldier's Memorial to view the scene. Appellant did object to this request and, after appellant was allowed to propound reasons in support of his argument that the jury not be allowed to visit the memorial, the trial court granted the jury's request. We note, as the appellant has pointed out, that allowing such a view is discretionary with the trial court. *State v. O'Neal*, 718 S.W.2d 498, 502 (Mo. banc 1986). Appellant's claim of prejudice from the jury's viewing the scene is that there may have been something near the scene that was not present at the time of the incident and that the jury's view would take place in the daylight while the incident occurred at night.

However, the evidence regarding the memorial centered upon the steps. The victim was dragged up the steps and, in the process, she hit her head upon one of the steps. In addition, the testimony at trial concerned the fact that the rape took place behind the wall of the memorial, out of the view of the street. The configuration of the steps and the ability to be concealed behind the wall would not be substantially affected by daylight.

In addition, the court seemed to be under the impression that the photographs which were admitted into evidence did not clearly portray the scene. The court instructed the jurors not to discuss the case while they were at the memorial or en route, until, of course, they arrived back in the jury room.

While we find no abuse of the court's discretion in allowing the jury to view the scene, we would be remiss if we did not mention that this issue is made more difficult by virtue of the prosecutor's improper invitation. While we refuse to find fault with the court's failure to take action, sua sponte, the prosecutor's remark has no place in such a case.

The conviction and sentence of the appellant is affirmed.

CRIST and AHRENS, JJ., concur.