**STATE of Missouri, Plaintiff–Respondent,**

v.

**Raymond GOODWIN, Defendant–Appellant.**

**No. 23629.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 30, 2001.

Motion for Rehearing and Transfer to Supreme Court Denied Nov. 21, 2001.

Devon F. Sherwood, Sherwood, Honecker & Bender, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

NANCY STEFFEN RAHMEYER, Judge.

Raymond Goodwin ("Appellant") appeals from his conviction in a court-tried case for the class C felony of statutory rape in the second degree under § 566.034, RSMo 2000. Appellant was sentenced to a four-year term of imprisonment in the Missouri Department of Corrections. On appeal, Appellant contends the trial court erred 1) in denying Appellant access to the victim's hospital records, 2) in excluding testimony that Appellant was law-abiding, and 3) and in not declaring a mistrial when the prosecutor made a reference to Appellant's unwillingness to take a polygraph examination. We affirm.

This court reviews the facts in the light most favorable to the verdict. *State v. Parker,* 886 S.W.2d 908, 916 (Mo. banc 1994). Appellant does not contest the sufficiency of the evidence. In a light most favorable to the verdict, the facts are as follows: Commencing when the victim (Appellant's biological granddaughter) was twelve years old, Appellant began sexual contact with her. The sexual contact commenced with Appellant kissing his granddaughter on the mouth and progressed to Appellant's fondling of the victim, oral sex on the victim, having the victim manually stimulate Appellant's penis while he watched in front of the bathroom mirror, and sexual intercourse. During a period

of four years, Appellant had sexual intercourse with his granddaughter more than fifty times. On April 5, 1995, the victim was hospitalized at Lakeland Regional Hospital ("Lakeland") after she left a note for her mother threatening to harm herself if she did not get some help. While in Lakeland the victim revealed the sexual contacts with her grandfather, thus beginning the investigation and criminal charges which culminated in Appellant's conviction.

Appellant complains of error in his Point I as follows:

> THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE IN DENYING DEFENDANT ACCESS TO [VICTIM'S] LAKELAND HOSPITAL RECORDS BECAUSE SAID DENIAL INFRINGED UPON DEFENDANT'S SIXTH AMENDMENT RIGHT TO CROSS–EXAMINE AND CONFRONT THAT WITNESS IN THAT THE RECORDS WOULD BE EXPECTED TO CONTAIN PRIOR STATEMENTS BY THE WITNESS ADMISSIBLE AS IMPEACHMENT OR AS SUBSTANTIVE EVIDENCE.

On September 29, 1995, the docket sheet reflects a "Motion for Discovery of Medical Reports and Notice" was filed. A copy of the motion was not filed with this court. The docket sheet reflects that on January 26, 1996, "COURT RULES MOTIONS, ATTY WAMPLER TO PROVIDE ORDER." Again, Appellant has not provided this court with a copy of any order, nor does the docket sheet reflect that Wampler, Appellant's attorney, provided the court with an order. Although there is an entry on February 26, 1996 that states, "ORDER (PROVIDED BY THE STATE PER COURT'S ACTION ON 1/26/96) ENTERED AND FILED, COPIES TO PA CARRIER AND ATTY WAMPLER," there is no copy of that order in the Legal File. We do not know the scope of the request for any hospital records. We do not know the specific reason for the request for the records.

■ Further, there is no evidence that Appellant was denied access to the records through the use of a subpoena at trial. A representative of Lakeland was subpoenaed by Appellant on the first day of trial. Due to scheduling difficulties, it was clear that the State's case would not be completed. Appellant's counsel asked for and received from the trial court a directive to the Lakeland representative that the subpoena was still in effect and that the custodian of records had to reappear for the presentation of Appellant's case. At no time was the issue of the subpoena for Lakeland ever addressed again. A review of the docket sheet indicates that no further orders concerning the subpoena were ever issued. The court did not quash the subpoena. It may be that Appellant chose not to proceed with his attempt to get the records as a matter of trial strategy. We cannot convict the trial court of error for failing to take action Appellant never requested it take. *State v. Zelinger*, 873 S.W.2d 656, 660 (Mo.App. S.D.1994). It is hard to discern from the Point Relied On and the record on appeal how the trial court denied access to the victim's hospital records. Rule 81.12(a) requires that the Appellant file a record on appeal that contains all of the record, proceedings, and evidence necessary for us to make a determination on appeal. *Providian National Bank v. Houge*, 39 S.W.3d 552, 554–55 (Mo.App. S.D.2001).

Nonetheless, despite his non-compliance with Rule 81.12(a), we will review his point *ex gratia*. The Point Relied On simply alleges that the records "would be expected to contain prior statements by the witness admissible as impeachment or as substantive evidence." We surmise from Appellant's brief that his position on ap-

peal is that the physician-patient privilege asserted by the victim at trial was outweighed by Appellant's right to cross-examine the victim by using her medical records. We will address what we believe to be Appellant's argument.

■ The accused does have the right to be confronted with the witnesses against him; however, the right to confront is satisfied if defense counsel receives wide latitude at trial to cross-examine witnesses. *Parker*, 886 S.W.2d at 916. "The defendant is not entitled to information on the mere possibility that it might be helpful, but must make 'some plausible showing' how the information would have been material and favorable. *Ritchie*, 480 U.S. at 58 n. 15, 107 S.Ct. at 1002 n. 15, *quoting United States v. Valenzuela Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982)." *Id.* at 917.

In *State v. Moorehead*, 811 S.W.2d 425 (Mo.App. E.D.1991), the defendant claimed the trial court erred in not allowing him to introduce the victim's medical records in order to impeach the victim's testimony and to bolster the defendant's claim that the victim consented to sexual intercourse. The defendant claimed that the privilege must yield to defendant's Sixth Amendment right to confront the witnesses against him. The Eastern District held that the trial court properly recognized the existence of the physician-client privilege and appropriately limited defendant's use of the victim's medical records for impeachment. *Id.* at 428. The court found appellant was able to effectively cross-examine the victim and bring out the victim's unstable mental state without the use of the records. *Id.*

■ Here, we can not ascertain whether Appellant made a showing about the materiality or the exculpatory nature of the records in his pretrial request for the records or at trial. The only information we discern from the record is that Appellant's attorney stated at trial, before evidence was taken, that he wanted the Lakeland records to support his belief that the victim was using alcohol regularly and smoking marijuana during the time period Appellant was charged with molesting her. He clarified that he might want to argue later that the victim's use of marijuana affected her ability to "remember and relate the events."

The testimony in this case was that the victim had never told anyone of the sexual abuse until she was admitted to Lakeland. Because consent is not an issue in a statutory rape case, Appellant's basis for wanting the records cannot relate to whether or not the victim consented.[1] Appellant was granted a wide latitude in asking questions concerning the victim's use of drugs or alcohol that would affect her ability to remember the incidents, but there was no evidence that the victim was under the influence of drugs or alcohol during any or all of the incidents of sexual abuse. Appellant has not pointed out any evidence or testimony which reflects on the victim's ability to recollect the abuse. It appears that Appellant was able to pursue the point of the victim's drug and alcohol use despite not having the Lakeland records.

Appellant did not present specific facts to establish what information was contained in the records and how such information would be favorable to him. This alone is fatal to any claim of error concerning his access to the victim's Lakeland records. *See State v. Seiter*, 949 S.W.2d

---

1. Section 566.034 RSMo 2000 states: "A person commits the crime of statutory rape in the second degree if being twenty-one years of age or older, he has sexual intercourse with another person who is less than seventeen years of age."

218, 221 (Mo.App. E.D.1997). Point I is denied.

Because it is related to the Lakeland records, we next address a motion filed by Respondent asking this court to remand the case to permit the trial court to conduct an *in camera* review of those records. Although neither Appellant nor Respondent requested an *in camera* review of the records at trial, Respondent nonetheless contends that because the trial court did not conduct a review of the records, it is impossible to adjudicate Appellant's claim. Respondent cited *State v. Newton*, 925 S.W.2d 468 (Mo.App. E.D.1996) for that proposition and the procedure for an *in camera* review by the trial court.

In *Newton*, the issue was whether a key eyewitness was competent to testify at a murder trial. Defendant made the allegation that the psychological records contained vital impeachment evidence, specifically, that the key eyewitness to a murder may have experienced hallucinations at the time of the kidnapping and murder. *Id.* at 471. The appeals court determined that the trial court had improperly quashed the subpoena *duces tecum* but acknowledged that protection against public disclosure of the alleged privileged material was also necessary. *Id.*

The court of appeals ordered the case remanded to the trial court to conduct an *in camera* inspection of the evidence to determine if it was relevant and material. After the remand to the trial court, the Eastern District, without viewing the records, upheld the trial court's ruling that the records did not contain relevant evidence under an abuse of discretion standard. *State v. Newton*, 963 S.W.2d 295, 297 (Mo.App. E.D.1997). The supreme court granted the defendant's application for transfer and ordered the court of appeals to review the records. *Id.* After reviewing the records, the court of appeals

denied defendant's point concerning the quashing of the subpoena.

■ The issue before this court is distinguishable from *Newton*. First, the victim's competency to testify has never been questioned in this case. Extensive cross-examination was allowed concerning her ability to remember the events due to drug use or alcohol use. There was no allegation of hallucinations. Additionally, Appellant was given DFS records. There is no indication in the record that the trial court ever sustained a motion to quash the subpoena. Finally, as noted above, no specific facts were alleged about what information Appellant believed was contained in the records that would be favorable to his position.

This case is more factually similar to *State v. Seiter*, 949 S.W.2d 218 (Mo.App. E.D.1997). In *Seiter*, the defendant complained the trial court erred in quashing subpoenas *duces tecum* on a social worker and a psychologist for the production of their reports, notes, and documentation regarding the treatment of the victim or her mother. Defendant argued that the court should have ordered *sua sponte* a review of the records *in camera* to assess the materiality of the evidence sought. *Id.* at 220.

Defendant argued that the records contained relevant, material and discoverable evidence that was "possibly exculpatory" and "possible impeachment evidence." *Id.* In affirming the trial court's decision to quash the subpoenas, the court held that the defendant was not entitled to the production of the records on the "mere possibility" that the information might be helpful to his case. *Id.* at 221. Likewise,

[d]efendant did not present specific facts to establish what information was contained in the records and how such information would be favorable to him.

Defendant thus failed to meet the threshold requirement for the trial court to order the production of the psychological and school records because he did not establish a basis for his claim that those records contained evidence material to his defense.

*Id.*

In this case, a subpoena was not quashed, and no specific facts were alleged warranting the court to view the records *in camera.* We do not believe a remand for an *in camera* review of the records is warranted under the facts of this case. Respondent's Motion for Temporary Remand is denied.

■■■■■ On his second point on appeal, Appellant claims the court erred in denying the admission of the testimony of Betty Lipscomb ("Lipscomb") that Appellant had a reputation for being of good moral character. Evidence of reputation "as to those traits of character which ordinarily would be involved in the commission of an offense such as that charged" may be offered by defendant. *State v. Bolen,* 731 S.W.2d 453, 461 (Mo.App. E.D.1987). The evidence of Appellant's good reputation as to character traits inherent in the crime charged is relevant to show the improbability of Appellant committing the crime and as substantive proof of innocence. *State v. Martinelli,* 972 S.W.2d 424, 434 (Mo.App. E.D. 1998). The evidence of general good character, however, that is not restricted to the traits of character involved in the crime is not admissible. *Bolen,* 731 S.W.2d at 461. The defendant who claims error in the reception of evidence has the burden of showing error and prejudice. *State v. Schell,* 843 S.W.2d 382, 384 (Mo.App. E.D. 1992). "The trial judge has discretion over the admission of cumulative evidence, and this exercise of discretion will not be disturbed on review unless an abuse of discretion is clearly shown." *State v. Rad-*

*ford,* 646 S.W.2d 366, 367 (Mo.App. W.D. 1982). This court will not interfere with the trial court's exclusion or inclusion of evidence absent a clear abuse of discretion. *State v. Roberts,* 785 S.W.2d 614, 618 (Mo. App. E.D.1990).

Appellant argues that his reputation for "moral behavior" is at issue in that the crime charged "bespeaks immorality." Neither party has cited to any cases dealing with the specific question of whether being a "good moral person" is a specific character trait that rebuts the trait of character involved in statutory rape. Appellant cites to *State v. Anslinger,* 171 Mo. 600, 71 S.W. 1041 (1903) for the general proposition that evidence of the accused's good character is admissible in all criminal cases where the nature of the charge reflects upon the character of the person charged. The *Anslinger* court decided whether, on a charge of voting twice in an election, the trial court erred in failing to include in its jury instructions the subject of good character of the defendant when the good character evidence was that the defendant was a hard working man. *Id.* at 1043. The court found that the trial court did not err because the evidence was not related to the charge. *Id.* The court noted that a man may be industrious and still dishonest or he may work hard and still have no respect for the law. *Id. Anslinger* does not assist Appellant.

Likewise, *State v. Quinn,* 344 Mo. 1072, 130 S.W.2d 511 (1939), cited by Appellant, does not provide guidance on the character trait at issue in a statutory rape case. In *Quinn,* the defendant was charged with grand larceny and sought to introduce evidence on his reputation for being a law-abiding citizen. The supreme court reversed the denial of the evidence by holding that the jury should have heard evidence concerning the defendant's repu-

tation as a law-abiding citizen. 130 S.W.2d at 515.

■ While it certainly could be argued that a man who has oral sex and sexual intercourse with his twelve-year-old grandchild has a moral deficiency, we need not address the issue because we find the record is less than clear upon what grounds the specific objection was sustained, the testimony was cumulative of earlier testimony and it is unclear whether the proffered testimony was based upon Appellant's reputation in the community or the witnesses personal opinion. The specific denial of the evidence came about as follows:

> [Appellant's Counsel]: And I'll ask the question whether you're acquainted with his reputation for having a person of—being a person of good moral character.
>
> [Asst. Prosecuting Attorney]: Objection, your honor.
>
> THE COURT: Sustained.
>
> [Appellant's counsel followed with an offer of proof]:
>
> As a part of an offer of proof, ma'am, regarding his reputation for being a good moral person and a law-abiding person, what is your answer to that?
>
> [Lipscomb]: I'd say he definitely was. He's very honest.
>
> [Attorney]: All right. And is that from what you know about him or does it include also what you know about him from others, other people as well?
>
> [Lipscomb]: From what I've seen from him.
>
> [Attorney]: And what about his reputation for being a moral person, having good morals? Is that reputation good or bad?
>
> [Lipscomb]: Very good.
>
> [Attorney]: And also that's based on what you've heard other people say

about him and his reputation in the community. Is that correct?

> [Lipscomb]: Yes.

■ Lipscomb's initial answer was based on what she had seen. The personal opinion of Lipscomb, based on her personal views and not on Appellant's general reputation, is immaterial and inadmissible. *State v. Verge*, 736 S.W.2d 423, 424 (Mo. App. W.D.1987). It is not possible to discern whether or not her opinion is based solely on her personal knowledge of Appellant. *See Schell*, 843 S.W.2d at 384.

Furthermore, two other character witnesses were allowed to testify about Defendant's character. The trial court allowed testimony from witnesses that Appellant had a good reputation in the community for honesty, truthfulness, good moral character and being a law-abiding citizen. The court also heard testimony that Appellant went to church regularly. The trial court did not abuse its discretion in excluding the testimony of Lipscomb that Appellant was a moral person. Point II is denied.

■ In his final point, Appellant contends that the prosecutor's remarks in opening statement that Appellant refused a polygraph test were so inflammatory and prejudicial that a mistrial should have been granted. We review the trial court's refusal to grant a mistrial for an abuse of discretion. *State v. Hibler*, 21 S.W.3d 87, 94 (Mo.App. W.D.2000). This was a court-tried case. Appellant admits that the cases are "legion" that a judge is presumed to be able to disregard the most inappropriate, improper material and proceed to a fair result. *See, e.g. State v. Anders*, 975 S.W.2d 462, 466 (Mo.App. W.D.1998). Nonetheless, Appellant argues that the mere mention of Appellant's reluctance to take a polygraph examination

is a "species of misconduct in a class by itself" which warrants a mistrial even in a bench trial. We decline to create a new classification of rules that mandate an automatic mistrial in a bench-tried case for any remarks made in opening statement concerning the reluctance of the defendant to take a polygraph test. We see no reason why a trial judge should not be presumed to have disregarded any improper remarks in opening statement. Appellant's Point III is denied.

The judgment is affirmed.

GARRISON, P.J., and PARRISH, J., concur.