**STATE of Missouri, Respondent,**

v.

**Charles ARNOLD, Appellant.**

**No. 62999.**

Supreme Court of Missouri, Division No. 2.

March 9, 1982.

Peter N. Sterling, Acting Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Catheryn B. Starke, Asst. Atty. Gen., Kansas City, for respondent.

JAMES A. REINHARD, Special Judge.

Appellant was charged with Class B rape in Count I, a violation of § 566.030,[1] armed criminal action in Count II, a violation of § 571.015, and burglary, first degree in Count III, a violation of § 569.160. A jury found him guilty on all three counts and assessed his punishment at 5 years on each count. The court sentenced him in accordance with the jury verdicts and ordered each sentence to be served consecutively. The Court of Appeals, Western District, affirmed his convictions for rape and burglary, first degree, reversed his conviction for armed criminal action, and transferred the case to this court. We have jurisdiction pursuant to Mo.Const. Art. V, § 10.

The Western District ordered the case transferred so that we might determine whether a remark by the prosecuting attorney during closing argument constituted a comment on the failure of the appellant to testify. We consider the case now the same as on original appeal. We affirm appel-

1. All citations are to RSMo. 1978 unless otherwise indicated.

lant's convictions for rape and burglary, first degree, and reverse his conviction for armed criminal action.[2]

On January 22, 1979, at 9:30 p.m. and again, later, at 10:30 p.m., appellant knocked on the door of the manager of an apartment building in Kansas City, Missouri, and asked for a tenant by the name of John Bush. Bush had apparently lived in the building two years earlier, but the appellant was advised by the manager on both occasions that Bush no longer resided there.

At about 11:00 or 11:30 p.m. on the same evening, a 30 year old female tenant of a third floor apartment of this building answered a knock on her door. When she opened the door, she was confronted by appellant who asked her if she knew a man named Bush. After she told him she did not, appellant asked her if she was alone in the apartment. Even though she was by herself, she told him her husband was home but in bed. Appellant insisted that she wake him. Hearing the apartment manager outside and fearing for her safety, she started out her door. The appellant, however, pulled a knife, put his hand to her neck and pushed her back into the apartment. Once inside, he pushed her onto a bed and raped her.

After the attack, the victim left the apartment and went to her neighbor's apartment. There, she related the details of the rape. The police were summoned and appellant was apprehended trying to leave the apartment complex. While she was in her neighbor's apartment, the apartment manager noticed red marks on the victim's neck.

The defense was consent. While appellant did not testify, he called three witnesses. The first was the medical examiner who had examined the victim at the hospital. He testified he conducted a pelvic examination of the victim and found motile semen in the victim's vagina. He also testified no red marks were apparent on the victim's neck and there was no other evidence of physical injury to the victim. The second witness was a friend of appellant

who testified that at his request, she secured several items from his apartment, including luggage, sheets, and pillowcases. The victim identified these items as coming from her apartment and they were introduced into evidence. The third witness for appellant was an investigator for the public defender who testified as to the chain of custody surrounding this property. The victim testified that she had not given these items to the appellant and he had not taken them while in her presence. She further noted that he had not had time to steal them at the time of the rape. She testified that several weeks prior to the instant events, however, burglaries had occurred in and near the apartment complex. At that time, she had notified her landlord that several items were missing from her apartment. The landlord noted the burglaries and notified law enforcement authorities.

In addition, the victim and others were thoroughly cross-examined by defense counsel in an attempt to gain an admission that the victim knew appellant and had been with him on prior occasions. All of the state's witnesses, including the victim, disclaimed knowing or having ever seen appellant prior to the instant events.

█ In his first and second points on appeal, appellant asserts trial court error in convicting and sentencing him for both rape and armed criminal action. In light of previous decisions of this Court, we agree with the Western District that appellant's conviction for armed criminal action constituted double jeopardy and should be reversed. *See, State v. Haggard,* 619 S.W.2d 44 (Mo. banc 1981); *State v. Morgan,* 592 S.W.2d 796, (Mo. banc 1980), *vacated* 449 U.S. 809 (1980), *on remand* 612 S.W.2d 1 (Mo. banc 1981); *State v. Olds,* 603 S.W.2d 501 (Mo. banc 1980).

In appellant's third point, he alleges error because of three remarks made by the prosecuting attorney during closing argument. Appellant promptly objected to the first two remarks and made a motion for a mistrial, both of which are overruled by the

**2.** We have drawn freely from the opinion of Manford, P. J.

trial court. He did not object to the third remark, consequently, it must be reviewed under the plain error doctrine. We shall treat each of the three challenged remarks separately.

Appellant first contends that the prosecutor's statement, "Nobody told you it didn't happen," [3] constituted a direct reference to his failure to testify and constituted a misstatement of the burden of proof. His argument under this point abandons the latter contention.

■ Unquestionably, a prosecutor is prohibited from adversely commenting on an accused's failure to testify. *State v. Hutchinson,* 458 S.W.2d 553 (Mo.banc 1970). The Missouri Constitution provides that "no person shall be compelled to testify against himself in a criminal cause ...." Mo. Const.Art. I, § 19. It is also provided by § 546.270 and Rule 27.05(a) that:

If the accused shall not avail himself or herself of his or her right to testify, ...

it shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt, *nor be referred to by any attorney in the case,* nor be considered by the court or jury before whom the trial takes place. (emphasis added).

■ Appellant cites *State v. Frankoviglia,* 514 S.W.2d 536 (Mo.1974) in support of his contention that this was a direct reference to appellant's failure to testify. Where there is a direct and certain reference to failure of the accused to testify, that constitutes reversible error. *State v. Rothaus,* 530 S.W.2d 235, 237 (Mo.banc 1975). In *Frankoviglia,* this court held: "The key words of the rule and statute are 'accused' and 'testify' ...." at 541. Crucial to the determination of whether the state has made a direct and certain reference to the accused's failure to testify is the use of these words or their equivalent.[4] *State v.*

---

3. Now, I am going to talk about the elements you have to find in connection with the witnesses or the evidence that you heard, what they told you. "Count No. I, if you find and believe from the evidence beyond a reasonable doubt: One, that on or about January 22, 1979, in the County of Jackson, State of Missouri, the defendant was not married to Clara _____."

There is no evidence that all of those elements are not true. Clara _____ told you it was January 22, 1979. Everybody told you it was January 22, 1979.

"In the County of Jackson, State of Missouri," they all told you that that apartment building was located in Kansas City, Jackson County, Missouri—uncontroverted. "Clara _____ told you that she was not married to him" (indicating) Charles Arnold. There is no evidence that she was—uncontroverted.

"Second, that at that time and place the defendant had sexual intercourse with Clara _____." Clara _____ told you. She told you it happened. *Nobody told you it didn't happen.*

MR. BROWN: Your Honor, may we approach the bench.

(Counsel approached the bench and the following proceedings were had:)

MR. BROWN: Your Honor, I would object to counsel's remarks regarding "nobody told you," the jury that there was no consent. State has a burden to prove that it was without consent. The defendant has no burden of proof in this case until it brings forth any evidence. I think that's a prejudicial remark

on the burden of proof, and I would ask that you declare a mistrial at this point, because defendant is not held to produce any evidence or to controvert the lack of consent. THE COURT: You can argue your side of the case for the defense, but all the counsel has said is that there is nothing to the contrary. He says the State has proved that there is nothing to the contrary. There has been no comment on the failure to testify, and I hope that there will not be by either of the counsel. I see nothing wrong. The objection is overruled, and the motion is overruled.

(The proceedings returned to open court.)

MR. GNEFKOW: And "Third, that the defendant did so without her consent by the use of forcible compulsion." Clara _____ told you that she did not consent, period. That's the evidence. She told you that. (emphasis added).

4. For example, in *State v. Reed,* 583 S.W.2d 531, 533 (Mo.App.1979), the court held that the comment, "There is not a single witness who took the stand who is on trial. Bryan Reed is on trial," constituted a direct comment on the accused's failure to testify. Similarly, in *State v. Lindner,* 282 S.W.2d 547, 550 (Mo.1955), the prosecutor's statement, "I don't know what this boy [defendant] says. There is no evidence of any type by him in this case" constituted a direct reference to the accused's failure to testify.

*Cockrum*, 592 S.W.2d 300, 302 (Mo.App. 1979). No such words were used here.

■ Appellant argues that even if it is not a direct reference to the failure of the accused to testify, it is an indirect reference, citing *Eichelberger v. State*, 524 S.W.2d 890 (Mo.App.1975). The court must review the statement in the context it was made and determine whether it "highlighted" or was "reasonably apt to have directed the jury's attention to the fact he did not testify." *Eichelberger* at 894. If under the circumstances of the case, only the accused could deny the evidence on a vital portion of the case, the general statement that such proof was undisputed or undenied has been held to be an indirect reference to the accused's failure to testify. *See, State v. Robinson*, 184 S.W.2d 1017 (Mo.1945); *State v. Shuls*, 329 Mo. 245, 44 S.W.2d 94 (1931); *State v. Snyder*, 182 Mo. 462, 82 S.W. 12 (1904).

Implicit in these cases is that the evidence referred to must be vital to the state's case and damaging to the accused. If it is not, a jury would not expect contrary testimony by the accused. His failure to testify is then neither *highlighted* nor the jury's attention *directed* to it.

■ Here, the prosecutor stated: "[T]he defendant had sexual intercourse with Clara _____. Clara told you .... Nobody told you it didn't happen." The testimony to which the prosecutor referred was vital to the state's case, but it was not damaging to appellant because his defense was consent.

The issue of consent permeated the entire trial. Defense counsel introduced evidence of personal articles belonging to the victim. The inference counsel tried to create was that the appellant received the items as gifts and therefore the victim and the appellant knew each other. The defense counsel vigorously cross-examined the victim and the other state's witnesses as to their previous knowledge of the appellant. It was a witness for appellant that provided the medical evidence the victim had sexual intercourse that evening. In closing argument to the jury, defense counsel stated:

Now, Instruction No. Five tells you— Mr. Gnefkow has already gone over the basic elements—the one element that I want to focus on at this time and the third element, "That the defendant did so without her consent by the use of forcible compulsion."

*Consent*, that is what we are basing our defense on, and that is consent. (emphasis added).

Our research has revealed no Missouri case which has reached this precise point but has discovered a Texas case we find instructive. In *Scobey v. State*, 145 Tex. Cr.R. 481, 169 S.W.2d 185, 189 (1943), the prosecuting attorney stated in his closing argument to the jury, "It seems to me that the issue is uncontradicted that Mr. Howell was robbed ...." The Court of Appeals, answering the appellant's contention that such remark was a reference to his failure to testify, or to contradict testimony which he alone could deny, stated:

There was no issue as to whether Howell was robbed. The sole question was: Did appellant do it?

The language used by State's counsel did not—directly or by inference—call upon appellant to answer that question before the jury. The argument was not, therefore, a reference to his failure to testify.

Similarly, here, the issue in this case was not whether the victim and the appellant had sexual intercourse, but whether there was consent. The prosecuting attorney's reference to evidence of the former did not in this case call upon the appellant to refute it.

The defense attorney inaccurately argued to the trial court that the prosecutor's statement went to the issue of consent. "I would object to counsel's remarks regarding nobody told you that there was no consent." The prosecutor, however, had not mentioned consent. That was not mentioned until later, "[a]nd Third, that the defendant did so without her consent ...."

Under the circumstances of this case, the prosecutor's remark no more *highlighted* or

*directed* the jury's attention to the fact that appellant did not testify than did the prosecutor's earlier references to the "uncontroverted" facts that the appellant and the victim were not married, and these events took place on January 28, 1979, in Jackson County, Missouri. There is no merit to appellant's point.

The second remark by the prosecuting attorney challenged by appellant is contained in the following colloquy:

> Mr. Brown asks all of the State's witnesses—I asked all of the State's witnesses, have they ever seen Charles Arnold and Clara _____ together? There was no evidence that anybody ever saw them together.
> MR. BROWN: Your Honor, I will again object to that in the same—
> (Counsel approached the bench.)
> MR. BROWN: I will renew my objection in that the defendant has no burden of proof in this case, and that counsel's remark on, there is no evidence that anybody saw her with him, is objectionable, and this is prejudicial, and I ask for a mistrial again for the same reason that I stated earlier.
>
> . . . .
>
> THE COURT: The objection is overruled and the motion is overruled.

■ Appellant asserts that this is an improper attempt to misstate the burden of proof. Appellant does not now contend that this is an indirect comment on defendant's right not to testify, as he alleged in his motion for new trial and is consequently considered abandoned on appeal. *State v. Perkins*, 543 S.W.2d 805, 807 (Mo.App.1976).

■ Appellant apparently argues that since MAI-CR2d 2.20 establishes that the state has the burden of proof, any attempt to shift that burden in closing argument is error. The challenged statement by the prosecuting attorney was a comment upon the evidence and did not constitute an improper attempt to shift the burden of proof to the defendant. The victim was extensively cross-examined as to whether she knew the appellant. In addition, one of her friends testified that she had never seen the victim and the appellant together. The defense was predicated on the victim and the appellant being friends, but yet there was no testimony that they were. Counsel is permitted to argue matters directly in evidence and to draw proper inferences therefrom. *State v. Briggs*, 579 S.W.2d 819, 821 (Mo.App.1979).

■ The third challenged remark occurred in the second half of the prosecutor's closing argument:

> Occasionally, sometimes, a jury will say, "We know he did it, but you didn't prove it." Ladies and gentlemen, when you came into this courtroom during voir dire, I gave you a brief outline of what the case was about. And none of you knew anything about, and I submit to you ladies and gentlemen, if now you know he did it. I have proved it to you beyond a reasonable doubt. Thank you very much.

Appellant argues this constituted a definition of reasonable doubt. There was no objection to this portion of the prosecutor's argument, and hence appellant urges we review it as plain error. This requires error affecting substantial rights which results in manifest injustice or a miscarriage of justice. Rule 29.12(b). Appellant's point is controlled by *State v. Burnfin*, 606 S.W.2d 629, 631 (Mo.1980). In *Burnfin*, this court held a statement similar to this made by the prosecuting attorney in closing argument, and reviewed under the plain error doctrine, did not constitute a miscarriage of justice or result in manifest injustice. Appellant's point is without merit.

■ In his final point, appellant alleges the court erred in overruling his motion for acquittal on the charge of burglary, first degree, because of the insufficiency of the evidence. We do not agree.

Appellant was charged with burglary, first degree, a violation of § 569.160.1 by unlawfully entering an inhabitable structure for the purpose of committing rape and while within that structure causing im-

mediate physical injury to a person who was not a participant in the crime. Appellant contends there was insufficient evidence to establish that he caused immediate physical injury to the victim.[5] We disagree.

The victim testified that appellant squeezed her neck with his hand after entering the apartment. The manager of the apartment building testified that immediately after the rape, the victim "had red marks all around her neck." The doctor who examined her at an unstated later hour found no marks nor other evidence of physical injury.

Appellant appears to argue that § 569.-160.1 requires an injury of a permanent type. This court cannot find within that section such a requirement. In the verdict directing instruction, physical injury was defined as "physical pain, illness or impairment of physical condition." We think the evidence established the appellant caused the victim pain.

Webster's Third New International Dictionary defines pain as "a sensation which injures the skin;" or "a state of physical uneasiness ranging from mild discomfort ... to ... agony." The fact that the red marks did not appear or were not observed by the examining physician some time after the rape does not directly rebut the evidence that such marks appeared and were observed by another witness immediately after the attack. Appellant was entitled to rebut this evidence in the manner he chose. Conflicts in the evidence and the determination of the credibility of the witnesses are within the province of the jury. *State v. Edwards,* 574 S.W.2d 956, 957 (Mo.App. 1978).

We think a jury could infer from the testimony that appellant squeezed the victim's neck severely enough to cause her at least mild discomfort. The evidence was sufficient to support the finding by the trier of fact that appellant caused the victim physical injury. There is no merit to appellant's point and it is ruled against him.

Affirmed as to Count I and III; Reversed as to Count II.

WELLIVER, P. J., HIGGINS and SEILER, JJ., and ROPER, Special Judge, concur.

**5.** The statute provides:

A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:

(1) Is armed with explosives or a deadly weapon; or

(2) Causes or threatens immediate physical injury to any person who is not a participant in the crime; or

(3) There is present in the structure another person who is not a participant in the crime.

Appellant could have been convicted of first degree burglary under any one of these three subsections. The state chose to charge him under subsection (2).