**STATE of Missouri,
Plaintiff-Respondent,**

v.

**William F. BURKE,
Defendant-Appellant.**

No. 49816.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 30, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 29, 1986.

Application to Transfer Denied
Dec. 16, 1986.

Dorothy M. Hirzy, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Judge.

Defendant, William Burke, was found guilty by a jury of sodomy and kidnapping and was sentenced to a total of 29½ years imprisonment. Defendant appeals. We affirm.

We view the evidence in the light most favorable to the state. On May 9, 1984, the complainant, a 12 year old girl, was grabbed by defendant while she was walking down Pennsylvania Avenue in the City of St. Louis. Defendant put complainant in his van and bound her feet and hands. He then drove the van to an alley where he sodomized her. Upon releasing her, defendant threatened to kill her if she told anyone about what had happened. The complainant related the incident to the police a few days later after being interviewed as a possible assault victim.

■ Defendant did not testify. His defense was the sodomy never occurred. Through cross-examination and attempted impeachment, he tried to discredit the complainant as a mixed up, fantasizing, easily manipulated child. This is the thrust of defendant's first argument on appeal. He contends the complainant's testimony was uncorroborated and was contrary not only to the physical facts of the scene of the alleged sodomy but also contrary to the testimony of the complainant's mother and sister. This uncorroborated, contradictory evidence, defendant argues, failed to make a submissible case. We disagree.

Defendant failed to preserve this issue for appeal. He did make oral motions for judgment of acquittal at the close of the state's case and at the close of the entire case. He did not, however, question the sufficiency of the evidence in his motion for new trial. See, e.g., State v. Healey, 562 S.W.2d 118, 130 (Mo.App.1978). Nonetheless, it is manifest injustice for a trial court to submit a case to the jury on evidence insufficient to make a submissible case. State v. Nations, 676 S.W.2d 282, 283 (Mo.App.1984). We, therefore, address the issue of whether the state made a submissible case.

Admittedly, in this case, the complainant's testimony was the only direct evidence that she was kidnapped and sodomized by defendant. Her uncorroborated testimony is sufficient to sustain a conviction, however, unless "it is so inherently contradictory or unbelievable as to cloud the mind of the court with doubt." E.g., State v. Salkil, 659 S.W.2d 330, 333 (Mo. App.1983). This does not mean there can be no contradictions or inconsistencies in her testimony. Inconsistencies related to unimportant details or minor points of a nonessential nature are not considered to be "clouded with doubt." E.g., State v. Johnson, 595 S.W.2d 774, 776 (Mo.App. 1980). As long as her testimony about the essential matters of the crimes charged are without conflict, her uncorroborated testimony is sufficient evidence to make a submissible case. Id. See also State v. Harvey, 641 S.W.2d 792 (Mo.App.1982). "The occasional lapse of fact does not undermine the probity of that proof," State v. Salkil, 659 S.W.2d at 333, especially if the lapse occurs in the testimony of a child. See State v. Harvey, 641 S.W.2d 792, 801 (Mo. App.1982).

Here, the inconsistencies all pertain to collateral matters. For example, the complainant originally described the van to the police as yellow, but at trial she stated the van was yellow and white. She also gave somewhat conflicting descriptions of the van floor. These inconsistencies do not "cloud" our mind "with doubt". Moreover, contrasted to this type of inconsistency is complainant's unwavering description of the incident and identification of the defendant.

Defendant also notes the complainant testified the defendant let her out the back door of his van, but defendant contends his "evidence showed that this was impossible." Defendant misconstrues his evidence. Defendant's daughter testified "there's no way of getting out of the back doors of the van," and two people from defense counsel's office testified they were unable to get out through the back doors of the van on October 19, 1984 and December 8, 1984. Obviously, the jury could choose to disbelieve defendant's daughter and give little or no weight to tests performed on the doors of the van five and seven months after the alleged incident.

▐ Defendant next attacks an evidentiary ruling made by the trial court. The court permitted the complainant's mother and sister to describe changes in the complainant's behavior and personality which took place after the date of the alleged incident. Defendant labels this testimony as disguised "rape (sodomy) trauma syndrome," and, as such, defendant argues, it was improperly admitted to bolster the complainant's credibility. We disagree.

Quite often, in sex offense cases like sodomy and rape, there are virtually no eyewitnesses. Circumstantial evidence, and the complainant's word, therefore, often constitute the only proof available to the state. Obviously, then, circumstantial evidence is important, and it becomes particularly critical when the defense to sexual offense is the complainant's alleged consent. In these instances, to bolster the uncorroborated word of the complainant, the state will rely on two kinds of circumstantial evidence to prove lack of consent—evidence of the complainant's physical condition and evidence of his or her psychological condition.

In Missouri, when the defense is consent, we permit expert as well as lay witnesses to describe the complainant's physical condition after the offense to show force was used and there was no consent. *E.g., State v. Chandler,* 314 S.W.2d 897, 901 (Mo. 1958); *State v. Mitchell,* 339 Mo. 228, 96 S.W.2d 341, 343–44 (1936) (physician's testi-mony); *State v. Murphy,* 25 S.W. 95, 96 (Mo.1893). (lay testimony). We likewise permit expert as well as lay witnesses to describe the complainant's psychological or emotional condition after the offense to show there was no consent. *State v. Phillips,* 670 S.W.2d 28, 31–32 (Mo.App.1984); *State v. Thompson,* 668 S.W.2d 179, 181 (Mo.App.1984) (victim's testimony). *See also State v. Taylor,* 663 S.W.2d 235, 241 (Mo. banc 1984). The expert may testify that the psychological changes are consistent with those resulting from a traumatic or stressful sexual experience. *See, State v. Taylor,* 663 S.W.2d at 241. He may not, however, characterize the psychological changes as "rape trauma syndrome" because the limited scientific acceptability of this concept is outweighed by its potentially prejudicial effect. *Id.* at 239–42.

The admissibility of these types of circumstantial evidence is not limited to those sexual offenses to which the defense is consent. Our courts have both held and stated that evidence of the complainant's physical and psychological changes is relevant to prove the elements of the sexual offense itself and, thus, may be admitted to show the offense did in fact occur. *State v. Ogle,* 668 S.W.2d 138, 141–42 (Mo.App. 1984), *cert. denied,* 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 91 (1985). (mother's testimony). *See also, State v. Burton,* 198 S.W.2d 19, 21 (Mo.1946). (mother and father's testimony about daughter's physical condition in action for statutory rape); *State v. Foster,* 490 S.W.2d 662, 664–65 (Mo.App.1973). (no mention that consent was a defense).

In *State v. Ogle, supra* the defendant testified the complainant lied about the rape. The court held the mother's testimony about her daughter's behavioral changes after the date of offense was relevant and admissible to show the rape had occurred. The Court reasoned:

If there was no question but that a rape had occurred, such evidence would not be relevant, but where there is a question whether the complainant was forcibly raped, her condition long after the rape

may be relevant. That is particularly true where, as here, the defendant contends that the complaining witness lied about the rape. *Id.* at 141.

The foregoing cases show how we reached our present position on this issue. Common experience teaches us a sexual offense can cause behavioral and personality changes in the complainant. Evidence of such changes renders the occurrence of the offense more probable than it would be without such evidence. This evidence is, therefore, relevant. *State v. Thompson,* 668 S.W.2d 179, 181 (Mo.App.1984); *State v. Berry,* 609 S.W.2d 948, 954 (Mo. banc 1980). The probative value of this evidence has been weighed against its potentially prejudicial effect to determine whether to exclude the evidence. The relative trustworthiness of observations of change by disinterested experts and those by interested kin is included in this determination. The determination has been and is to permit kin as well as experts to testify about their observations. *State v. Ogle, supra.* This is what the trial court did here.

During the state's case, both counsel engaged in an extensive in chambers conference concerning the mother and sister's possible testimony about changes in the complainant's behavior. From defense counsel, the trial court established that defendant's theory, unquestionably, was the incident never occurred, and, from the state, the trial court established the mother and sister's testimony would be limited to the period immediately after the date of the alleged incident. Then, following its express understanding of *State v. Ogle, supra,* the trial court permitted the mother to testify that the complainant, her daughter, did not want to go back to school, her grades began to drop, she began to have nightmares and she would not go outside unless someone was with her. The sister testified complainant became more with-

drawn. The trial court's tight control in admitting this limited testimony was a proper exercise of its discretion. *E.g., State v. Ogle, supra; see also, State v. Wickizer,* 583 S.W.2d 519, 524 (Mo. banc 1979).

Defendant's labelling of this testimony as disguised "rape (sodomy) trauma syndrome" is inaccurate. The testimony was lay testimony not expert testimony. Thus, it could not be and was not characterized as "rape trauma syndrome." It is this characterization, however, which causes the prejudice. According to our Supreme Court, the scientific terminology itself— "rape trauma syndrome"—connotes rape and suggests the syndrome may be caused only by rape. For this reason, the jury may consider the scientific terminology as dispositive of the issue of consent and, thus, not decide that issue itself. *State v. Taylor,* 663 S.W.2d at 239-42. Since the phrase "rape trauma syndrome" was never used in front of the jury, the testimony here did not suffer from the fatal defect defined by the Court in the *Taylor* case. *State v. Shaw,* 694 S.W.2d 857, 860 (Mo. App.1985).

Defendant's remaining two points center on the prosecutor's closing argument. First, defendant argues the prosecutor characterized him as a "child molester" and as a person with a "deviant, sick mind." These characterizations, defendant contends, prejudiced the jury concerned, as it was, with the alleged sodomy of a twelve year old girl.

During closing argument, the prosecutor twice referred to defendant as a child molester.[1] Defendant failed to object to these references. Consequently, defendant failed to preserve the issue for appeal. *State v. Munoz,* 678 S.W.2d 834, 835 (Mo. App.1984). We review this issue, however, as plain error and find no "manifest injus-

---

1. The first reference was:
   "A scared, timid, 12–year–old little girl had no reasonable means of defending herself from this child molester. That's what he is, folks. That's what you call a person that does what this guy did."

The second characterization was:
   "And, yeah, he is a child molester and I have no qualms about standing up here and telling you that, because that's exactly what he is, a child molester."

tice or miscarriage of justice" occurred. Rule 30.20.

Epithets about a defendant made during closing argument are unnecessary and can so inflame the jury that prejudice results. *See, e.g., State v. Hurt,* 668 S.W.2d 206, 214 (Mo.App.1984). But, not every remark is so offensive that it impairs the defendant's right to a fair trial. *See State v. Munoz,* 678 S.W.2d at 835–36. Considered in context of the entire trial, the characterization may simply "constitute the expression of a conclusion urged upon the basis of the evidence." *State v. Hurt,* 668 S.W.2d at 214–15. Thus, the characterization is not prejudicial when there is evidence to support it. *E.g., State v. Munoz,* 678 S.W.2d at 835. That is what occurred here. The state's evidence showed defendant kidnapped a young girl, tied her up and sodomized her. This evidence supported the prosecutor's characterization of defendant, in common parlance, as a "child molester." *State v. Jackson,* 499 S.W.2d 467, 471 (Mo.1973).

■ Defendant's complaint against the characterization of him as a person with a "deviant, sick mind" rests upon a misconstruction of the record. In closing argument, defense counsel focused on what she believed to be discrepancies in the complainant's testimony, and counsel implied complainant may have had the idea of kidnapping and sodomy planted in her mind. In rebuttal, the prosecutor emphasized how unpleasant it was for any victim to testify, particularly about the details of sodomy. The prosecutor went on to argue: "Only a deviant, sick mind, ladies and gentlemen, would think that a 12–year–old kid would get a charge—". Defense counsel objected to this statement as an improper characterization of defendant. The trial court overruled the objection stating: "I thought that last remark was as to the victim's coming here. I thought that's what it was about."

Apparently, the trial court understood the prosecutor to be referring to anyone who might think the victim enjoyed testifying about the attack. The prosecutor, the court believed, was not specifically referring to defendant or to defense counsel; rather, he was merely trying to stress it was "no picnic" to testify about sodomy. To us, this was a reasonable interpretation. Since there was no improper characterization of defendant, the trial court properly overruled defendant's objection. *See State v. Munoz,* 678 S.W.2d at 836.

■ In his second attack on the prosecutor's closing argument, defendant contends the prosecutor improperly commented on defendant's failure to testify. Defendant did not object to the comments in question and, thus, also failed to preserve this issue for review. *See State v. Stuckey,* 680 S.W.2d 931, 937 (Mo. banc 1984). We consider the issue, however, under Rule 30.20 and again find there was no "manifest injustice [nor] miscarriage of justice."

"[A] prosecutor is prohibited from adversely commenting on an accused's failure to testify." *State v. Arnold,* 628 S.W.2d 665, 668 (Mo. banc 1982); Mo. Const. Art. I, § 14; § 546.270 RSMo.1978; Rule 27.05(a). The prosecutor may not say, directly, the "defendant" or "accused" failed to "testify", *e.g., State v. Frankoviglia,* 514 S.W.2d 536, 539 (Mo.1974), *State v. Hayzlett,* 265 S.W.2d 321, 323 (Mo.1954); nor may he make indirect comments which clearly imply reference is being made to the defendant's failure to testify. *E.g., State v. Reed,* 583 S.W.2d 531, 534 (Mo.App.1979). *See also State v. Arnold,* 628 S.W.2d 665, 668 (Mo.1982). Direct reference to the accused's failure to testify, or an indirect reference which had the identical effect, deprives the accused of a fair trial and, thus, constitutes plain error. *State v. Reed,* 583 S.W.2d at 533.

The comments in question here must be considered in context. Much of the testimony of defendant's witnesses described the usual condition and contents of defendant's van, and most of defendant's exhibits were photographs of the van. This evidence showed the van was used to haul and store antiques and was proffered to imply the van was always so full of material the attack could not have taken place there. None of defendant's witnesses, however,

saw the van on the day of the attack, nor were any of defendant's photographs taken on that day. Confronted with this evidence, the prosecutor argued:

Now, you heard some testimony regarding, oh, well, the van is always full of things and we use it to move antiques and furniture and there was chicken cages in there. I don't know how that has anything to do with anything in this case because there is only one person that could tell you what was in that van on May 9, 1984. There is only one person that can tell you that there wasn't any furniture, no antiques in that van on May 9, 1984. There is only one person who could tell you about the whereabouts of the defendant, William Burke, on May 9, 1984, and that was [the victim]. [The victim] is an eyewitness just like any eyewitnesses to a crime. But not only is she an eyewitness, she is a victim. She is the victim of the defendant, William Burke.

To us this argument simply means that no witness who testified knew what material was in the van or what occurred in the van on the day of the attack, except the complainant. This is consistent with the prosecutor's remarks in the final half of his closing argument when he argued: "Now there is no evidence that there was anything in [the van] except what [complainant] said was in it on May 9th."

This apparently was defense counsel's interpretation before hindsight set in, and, therefore, the reason no objection was made. Defense counsel, herself, argued as if defendant did testify, when counsel contended in her closing argument: "He (defendant) denied it (the crime)."

On this record, we do not find the prosecutor's argument to be an indirect reference which "when viewed in context, would cause the jury to infer ... the remark[s] referred to the accused's failure to testify." *State v. Hill,* 678 S.W.2d 848, 850 (Mo.App. 1984). More specifically, the prosecutor's argument did not cause "manifest injustice or miscarriage of justice." Rule 30.20. *See State v. Arnold,* 628 S.W.2d at 668.

*But see, State v. Williams,* 673 S.W.2d 32, 35–36 (Mo. banc 1984).

Judgment affirmed.

CRANDALL and PUDLOWSKI, JJ., concur.