STATE of Missouri, Respondent,

v.

Floyd Homer FINNEY, Appellant.

No. 19446.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 6, 1995.

Barbara Hoppe, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

Appellant was found guilty by a jury of sexual abuse in the first degree, § 566.100, RSMo Cum.Supp.1992, by subjecting a person less than twelve years old to sexual contact, and was sentenced to five years' imprisonment. Appellant's sole point relied on maintains there was insufficient evidence to support the verdict.

In adjudicating that issue, we view the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the verdict and disregard all evidence and inferences to the contrary. *State v. Silvey,* 894 S.W.2d 662, 673 (Mo. banc 1995). Review is limited to determining whether there was sufficient evidence from which a reasonable juror might have found Appellant guilty beyond a reasonable doubt. *Id.*

The alleged victim, M——, was six years of age at time of trial (February 7–8, 1994). His mother, T——, testified she and he moved into a Springfield apartment around September 4, 1993. It was one of two apartments in a converted house. The other apartment was occupied by Appellant.

T—— recounted that Appellant was "nice" to M——. Occasionally, M—— took pictures to Appellant, and there were instances when T—— sent M—— to Appellant's apartment for cigarettes.

In October, 1993, T—— asked M—— to go to Appellant's apartment for cigarettes. M—— "didn't want to." T—— testified that around that time, M—— was "getting out of control" and his school work was "going downhill." T—— talked to M——'s teacher because T—— "knew something was bothering [M——]."

M—— was in the first grade. By mid-October, 1993, his teacher also noted a change in his behavior. He became less attentive, and the color black became dominant in his drawings. The teacher observed M—— "strut or pose" in the presence of other children "like an adult being seductive." When the teacher directed the students to write the word "man" in their dictionaries, M—— drew a picture of a man who "was naked with the genitalia, a quite detailed drawing."

On October 14, 1993, Officer Rick Headlee of the Springfield Police Department went to M——'s school and talked to M—— about Appellant. M—— referred to Appellant as "Bill."

M—— revealed to Headlee that Bill had pulled down M——'s pants five times and M——'s underwear four times. Headlee asked M—— whether Bill had ever touched M——'s "private parts." M—— said, "Yeah." Headlee never asked "whether it was on top or underneath the clothes."

Headlee went to Appellant's apartment and asked Appellant whether M—— had ever been there. Appellant answered, "Yeah," and showed Headlee three pictures M—— had drawn.

The prosecutor presented M—— as a witness at trial. M—— identified Appellant as Bill.

Appellant's point relied on asserts M——'s testimony "was inconsistent, was not sufficient to establish the element of sexual contact, was not corroborated by other evidence or testimony and was contradicted by the testimony of [Headlee, T——, and M——'s grandmother] regarding what [M——] previously told them." This claim of error requires quotation of a substantial part of M——'s testimony.

"Q. And when you went over to Bill's house, would you go over there by yourself?

A. Yeah.

Q. When you went over to Bill's house did Bill ever do anything to you that you didn't like?

A. Yes.

Q. What would Bill do that you didn't like?

A. (No response.)

Q. Let me ask you some other questions.... Would Bill kick you?

.    .    .    .    .

A. No.

Q. Would he hit you?

A. No.

Q. Would he slap you?

A. No.

Q. Would he touch you?

A. No.

Q. What did Bill do that you didn't like ...?

[Appellant's lawyer]: I object to asking that again, he didn't provide any response before.

THE COURT: Overruled.

Q. ... what would Bill do that you didn't like?

A. Touch my private part.

Q. Okay. Is your private part above your belt or below your belt?

A. Below.

Q. And is your private part—do you go to the bathroom with your private part?

A. Yeah.

Q. Is it on the front of your body or on the back of your body?

A. Front.

Q. When Bill would touch your private, what would he touch your private with?

A. His hand.

Q. How many times ... did Bill touch your private part?

A. Five times.

.    .    .    .    .

Q. ... when Bill would touch you on your private part, ... would he ever move his hand?

A. No.

Q. So when he touched it did his hand just stay still?

A. Yeah.

Q. When he touched you on your private part was it on top of your clothes or underneath your clothes?

A. On top.

Q. Do you remember when a policeman came to ... School and talked to you?

A. Yeah.

Q. Did you tell him the truth when you talked to him?

A. Yeah.

.    .    .    .    .

Q. Okay. The first time that Bill touched you, where were you when he touched you?

A. In his house.

Q. Do you remember what room in his house?

A. Living room.

Q. Was anybody else there?

A. No.

Q. What did Bill do the first time?

A. Touched my private parts.

Q. ... Did Bill ever try to pull your pants down?

A. No.

.    .    .    .    .

Q. The second time where did it happen?

A. At his house.

Q. Do you remember what room?

A. Living room.

Q. And what did he do that time?

A. Touched my private parts.

Q. Did he try to pull your pants down that time?

A. Yeah.

Q. Did he pull your pants down ...?

A. No.

.    .    .    .    .

Q. ... did you say anything to Bill when he tried to pull your pants down?

A. Yes.

Q. What did you say to Bill?

A. I said no.

Q. The third time that it happened ... where were you?

A. At his house.

Q. Do you remember what room?

A. Living room.

Q. Did Bill try to pull your pants down that time?

A. No.

Q. Did he touch you then, the third time?

A. Yeah.

Q. Where did he touch you that time?

A. On my private.

Q. The fourth time, time number four, where were you when this happened?

A. Bedroom.

.    .    .    .    .

Q. And was anybody else there?

A. No.

Q. Did Bill try to pull your pants down then?

A. No.

Q. Did he touch you that time?

A. Yes.

Q. Where did he touch you that time?

A. My private.

Q. Time number five ... where were you?

A. In the bedroom.

Q. Was that at Bill's house?

A. Yeah.

Q. And did he try to pull your pants down time number five?

A. Yeah.

Q. Did he touch you that time?

A. Yeah.

Q. Where did he touch you?

A. My private.

Q. On time number five, did Bill pull your pants down?

A. No.

Q. Did you say anything to him when he tried?

A. Yeah.

Q. What did you say?

A. No."

Appellant presented T—— as a witness. She avowed M—— told her Appellant put his finger in M——'s "bottom." T—— testified: "He said that he tried to put his thing in there and then he started crying, and then he just used his finger and ... he said the second time that it happened he was laying on top of him and he heard me hollering for him and Mr. Finney wouldn't let him out of the apartment."

Appellant also presented M——'s grandmother (T——'s mother) as a witness. The grandmother testified:

"Q. And did [M——] tell you that he had been touched on his bottom by Mr. Finney?

A. Yes, he did.

Q. And, in fact, did he say something about Mr. Finney having put his finger up his bottom?

A. Yes, he did.

Q. Did [M——] say that Mr. Finney had laid down on top of him?

A. Yes, he did.

Q. Did [M——] say that Mr. Finney had pulled down [M——'s] pants and his underwear and touched his private?

A. Uh-huh."

■ Appellant concedes that a victim's uncorroborated testimony is sufficient for submission of a sex offense to a jury, but argues that "when the testimony of the victim is contradictory or inconsistent or the testimony is not convincing and leaves the court clouded with doubts, then the inconsistent testimony must be corroborated or the judgment cannot be sustained."

The Supreme Court of Missouri considered whether corroboration was required in *Silvey*, 894 S.W.2d 662. There, a jury found the accused guilty of committing sodomy upon a four-year-old victim. The opinion stated: "Corroboration is not mandated unless the victim's testimony is so contradictory and in conflict with physical facts, surrounding cir-

cumstances and common experience, that its validity is thereby rendered doubtful." *Id.* at 673. The Supreme Court held that although the victim's answers on direct examination differed from those on cross-examination, her testimony did not conflict with physical facts, surrounding circumstances and common experience. *Id.* Therefore, her testimony was sufficient, without corroboration, to sustain the conviction, and any contradictions and inconsistencies in her testimony were properly assessed by the jury in determining her credibility. *Id.*

As we understand Appellant, his contention that M——'s testimony was inconsistent is based on the answer M—— gave when the prosecutor asked M—— whether Appellant would touch him. As we have seen, M—— answered, "No." Appellant asserts that answer is inconsistent with M——'s later testimony that Appellant touched M——'s "private part" with Appellant's hand.

Appellant's observation is correct; however, M——'s testimony must be considered in context. The first time the prosecutor asked M—— what Appellant did that M—— didn't like, M—— did not answer. The prosecutor then asked M—— whether Appellant ever kicked, hit or slapped him. Because those questions concerned acts of violence, M—— may have understood the ensuing question (which asked whether Appellant touched M——) as an inquiry about violence. After Appellant answered, "No," the prosecutor asked M—— what Appellant did that M—— didn't like. Without equivocation, M—— answered that Appellant touched M——'s private part with Appellant's hand. Throughout the rest of his testimony, and without any inconsistency, M—— recounted five such instances.

Appellant's claim that M——'s testimony was inconsistent is thus based on one answer in twenty pages of testimony. In *Silvey,* there were numerous substantial inconsistencies in the victim's testimony, 894 S.W.2d at 673 n. 2, yet the Supreme Court of Missouri held no corroboration was required to affirm the conviction.

M——'s testimony about the sexual abuse did not conflict with any physical facts, surrounding circumstances or common experi-

ence. Applying *Silvey,* we hold the single inconsistent answer in M——'s testimony does not require reversal of the conviction.

■ Furthermore, in arguing that M——'s testimony was uncorroborated, Appellant ignores the evidence of changes in M——'s behavior after he began visiting Appellant's apartment. The changes during that six-week period were described by M——'s teacher and T——.

In *State v. Pollard,* 719 S.W.2d 38 (Mo. App.E.D.1986), the accused was charged with sodomizing a child. One issue at trial was whether the crime had indeed occurred. The prosecutor presented evidence that for two weeks after the alleged crime, there were changes in the victim's behavior in that the victim was afraid to go to school, suffered from loss of appetite, and had nightmares. *Id.* at 39–40. The Eastern District of this Court, citing *State v. Ogle,* 668 S.W.2d 138 (Mo.App.S.D.1984), *cert. denied,* 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 91 (1984), held that the evidence of the victim's behavioral changes was some evidence that the alleged sodomy had occurred. *Pollard,* 719 S.W.2d at 40[2].

In *State v. Burke,* 719 S.W.2d 887 (Mo. App.E.D.1986), the accused was charged with sodomizing a 12–year–old girl. The prosecutor presented evidence that the victim, immediately after the date of the alleged incident, did not want to return to school, her grades began to drop, she started having nightmares, and she would not go outside alone. *Id.* at 890. The Eastern District of this Court held common experience teaches that a sexual offense can cause behavioral and personality changes in the victim, and evidence of such changes renders the occurrence of the offense more probable than it would be without such evidence. *Id.* at 890.

Black's Law Dictionary 344 (6th ed. 1990) defines corroborating evidence as: "Evidence supplementary to that already given and tending to strengthen or confirm it. Additional evidence of a different character to the same point."

Although the evidence of M——'s behavioral changes was not extensive or compel-

ling, we agree with *Pollard* and *Burke* that it was some evidence that the alleged sexual abuse had occurred. We therefore reject Appellant's premise that M——'s testimony was entirely uncorroborated.

■ Appellant also attacks M——'s testimony by pointing out that it was contradicted by the testimony of Headlee, T—— and the grandmother in regard to what M—— had told them. As reported earlier, Headlee testified M—— said Appellant pulled down M——'s pants five times and his underwear four times. T—— and the grandmother testified M—— said Appellant laid atop him and Appellant inserted his finger in M——'s "bottom." The grandmother also quoted M—— as saying that Appellant pulled down M——'s pants and underwear and touched his "private."

At trial, under questioning by Appellant's lawyer, M—— testified Appellant never took M——'s clothes off, never lay on top of him, and never touched his "bottom" with his (Appellant's) hand. The testimony identified in the preceding sentence did not contradict any of M——'s other testimony at trial. It did, however, contradict the statements attributed to M—— by Headlee, T—— and the grandmother, identified in the preceding paragraph.

Appellant cites *State v. Kuzma*, 751 S.W.2d 54 (Mo.App.W.D.1987), for the proposition that corroboration of the victim's testimony is mandatory where such testimony is inconsistent with statements made by the victim at a deposition or out of court to a third party. *Id.* at 58. However, we note that in *State v. Sladek*, 835 S.W.2d 308, 310[3] (Mo. banc 1992), the Supreme Court of Missouri held: "Conflict between the testimony of the victim and other witnesses does not require application of the corroboration rule."

We need not determine the effect, if any, of *Sladek* on *Kuzma*. That is because *Kuzma* holds the corroboration rule does not apply where the inconsistency or contradiction bears on proof not essential to the case. 751 S.W.2d at 58[3].

■ For a conviction in the instant case, it was essential for the State to prove Appel-

lant subjected M—— to sexual contact by touching M——'s genitals "for the purpose of arousing or gratifying sexual desire of any person." § 566.010(2), RSMo Cum.Supp. 1992. Such touching "through the clothing" constitutes sexual contact. *Id.*

The State's theory was that the sexual contact occurred while M—— was clothed. M——'s testimony supported that theory. Whether Appellant may also have, on one or more occasions, pulled down M——'s pants and underwear, lay on top of him, and inserted a finger in his "bottom," does not affect the proof essential to establish guilt of the crime charged. We therefore hold that the conflict between M——'s testimony and that of Headlee, T—— and the grandmother did not require corroboration of M——'s testimony. Furthermore, as noted earlier, there was some minimal corroboration.

■ Appellant's final attack on the evidence is that it failed "to establish the element of sexual contact." Appellant proclaims the touching about which M—— testified could have been nothing more than "the innocent resting of an adult's hand on a child's lap while holding the child, the child's private parts immediately underneath the lap area." Appellant underscores M——'s testimony that Appellant did not move his hand while touching M——'s private part. Appellant warns us that affirming the judgment would subject any adult who holds a child on his lap to prosecution for sexual abuse.

We have searched M——'s testimony and have found no indication that the offense occurred while he was seated on Appellant's lap. Furthermore, M—— testified without objection that Appellant touched M——'s private part on five separate occasions. According to M——, the fourth and fifth occasions took place in Appellant's bedroom. M—— testified that on the fifth occasion, Appellant told M—— that he (Appellant) would hurt M—— if M—— told anyone. That evidence belies Appellant's hypothesis that the touchings were innocent or inadvertent.

Appellant cites no authority supporting his argument that the evidence was insufficient

to establish sexual contact. The argument is without merit.

Judgment affirmed.

PREWITT, P.J., and SHRUM, C.J., concur.