STATE of Missouri, Respondent,

v.

William SEITER, Appellant.

No. 70666.

Missouri Court of Appeals,
Eastern District,
Division Five.

June 10, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 14, 1997.

Application to Transfer Denied
Aug. 19, 1997.

Bernard Edelman, Barry S. Ginsburg, Kenneth R. Schwartz, Clayton, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for Respondent.

CRANDALL, Judge.

Defendant, William Seiter, appeals from the judgment of convictions, after a jury trial, of two counts of sodomy of a child less than fourteen years of age, § 566.060, RSMo Cum.Supp.1993 (Counts I and II); of two counts of rape of a child less than fourteen years of age, § 566.030, RSMo Cum.Supp. 1993 (Counts III and IV); and of two counts of sexual abuse in the first degree, § 566.100, RSMo Cum.Supp.1993 (Counts V and VI). He was sentenced to terms of imprisonment of fifteen years on Count I, of twenty years on Count II, of ten years each on Counts III and IV, and of five years each on Counts V and VI, all sentences to be served concurrently, except for Counts II and V which were to be served consecutively to each other. We affirm.

Defendant does not challenge the sufficiency of the evidence. Viewed in the light most favorable to the verdict, the evidence established that in the summer of 1993, the victim, M.P., a girl of ten years of age, lived with her single mother and two brothers, aged two and twelve. Defendant was involved in a relationship with the victim's mother and the victim's younger brother had been born of that relationship. Every day from June 1 through September 1, 1993, defendant visited the victim's home during his lunch break. Usually, the victim was alone because her older brother was out with friends and her younger brother was at day care while her mother worked. The multiple acts which formed the bases of the crimes with which defendant was charged and for which he was convicted occurred at the victim's home during these visits.

In approximately January 1994, the victim informed her mother that defendant had attempted to touch her breasts. The victim's mother confronted defendant who admitted to this act. The victim's mother later ended their relationship.

In March 1995, during the course of an argument with her mother, the victim attempted to slash her wrists with a kitchen knife. Because of the victim's agitated state, her mother transported her to the hospital. There, the victim spoke with a social worker and informed the social worker of additional sexual contact to which she was subjected by defendant over the course of the summer of 1993.

Defendant did not testify at trial. The defense was that the victim and her mother had fabricated the charges against him.

■ In his first point on appeal, defendant contends the trial court erred in quashing subpoenas *duces tecum.* Defendant served subpoenas *duces tecum* on a social worker and a psychologist for the production of "[a]ny and all reports, treatment files, documents, personal notes, recordings or other documentation regarding treatment or counseling" of the victim or her mother. Defendant also served a subpoena *duces tecum* on the school district the victim attended for the production of "[a]ny and all school records, behavioral records, attendance records, Teacher's notes, disciplinary actions, report cards, medical records" referring to the victim.

The social worker and psychologist moved to quash the subpoenas on the basis that the information sought by defendant was confidential and privileged. The State moved to quash the subpoena served on the school district on the basis that it was over broad and not calculated to lead to relevant or discoverable material. The trial court quashed the subpoenas *duces tecum* as to all documents with the exception of the school attendance records.

Defendant argues the records requested contained relevant, material, and discoverable evidence that was "possibly exculpatory" and included "possible impeachment evidence." He asserts the trial court should have ordered *sua sponte* a review of the records *in camera* to assess the materiality of the evidence sought. He argues the court's ruling precluded his review of those records "to examine their contents and to determine what would have been material evidence."

■ The State is under a duty to disclose, even without request, exculpatory evidence. Rule 25.03(A)(9). The defendant is not entitled to information on the mere possibility that it might be helpful, but must make some

showing as to how the information would be material and favorable. *State v. Parker*, 886 S.W.2d 908, 917 (Mo. banc 1994).

In *Parker*, the accused sought production of the personnel records of police officer witnesses. *Parker*, 886 S.W.2d at 916. The trial court reviewed the records of an Officer White covering a five-month period on the basis that the accused claimed the victim told a roommate that White had been disciplined for failing to properly report the victim's complaints about the accused. *Id.* at 917. The trial court denied production of the other officers' files. *Id.* The Supreme Court of Missouri opined:

> Here, [the accused] has made no showing about the materiality or exculpatory nature of the files of officers, other than White. Of course, a personnel file *might* include helpful information. This mere possibility—unsupported by any facts—is insufficient ... to justify production of personnel files of officers other than White.

*Id.*

In the present case, defendant referred to evidence in the requested records which might "possibly" be exculpatory and impeaching. Defendant was not entitled to the production of the records on the mere possibility that the information contained therein might be helpful to his case. Defendant did not present specific facts to establish what information was contained in the records and how such information would be favorable to him. Defendant thus failed to meet the threshold requirement for the trial court to order the production of the psychological and school records because he did not establish a basis for his claim that those records contained evidence material to his defense. We need not endeavor to catalog what he needed to show. *See State ex rel. King v. Sheffield*, 901 S.W.2d 343, 348 n. 7 (Mo.App. S.D.1995). It is sufficient to point out that defendant made no showing of the relevancy, materiality, and exculpatory nature of the information he sought from either the psychological or school records.

Defendant argues that at a minimum the trial court should have ordered *sua sponte* an *in camera* inspection of the records to determine their relevancy. He relies on *State v. Newton*, 925 S.W.2d 468 (Mo.App. E.D.1996) to support this proposition. In *Newton,* the accused challenged the competency of an important State witness who placed the accused at the victim's home at the time of the crimes. *State v. Newton*, 925 S.W.2d 468, 470 (Mo.App. E.D.1996). After a pre-trial hearing, the trial court denied the motions of the accused to find the witness incompetent to testify and to produce her psychological records. *Id.* at 471. The accused contended the records contained vital impeachment evidence; specifically, evidence the witness was experiencing hallucinations at the time of the crimes. *Id.* This court remanded the cause to the trial court to conduct an *in camera* inspection of the witness's psychological records. *Id.* at 473.

Upon remand, the trial court conducted an *in camera* inspection of the psychological records and determined that they did not contain material evidence bearing on the witness's competency to testify. This court issued an opinion holding that this determination by the trial court was not an abuse of discretion and declined to examine the records to make an independent relevancy determination. *State v. Newton*, Nos. 63939, 68569, slip op. at 2, 1997 WL 53012, —— S.W.2d ——, —— (Mo.App.E.D.Feb. 11, 1997). The Supreme Court of Missouri accepted application for transfer on April 29, 1997. Whether the supreme court will modify the holding of *Newton*, 925 S.W.2d at 468, is uncertain at this point.

In addition, the case before us is distinguishable from *Newton* in that the accused in *Newton* made a showing as to the materiality and relevancy of the requested records. The accused showed that the psychological records might establish that the witness was hallucinating at the time of the crimes and that such records were relevant to the issue of the witness's competency to testify, an issue which was before the court on the accused's motions. In contrast, the present defendant made no showing as to the relevancy and materiality of the records and did not identify specifically what the records would have disclosed that would be favorable to his defense. Before the court was re-

quired to conduct an *in camera* review of the records, it was essential that defendant set forth a factual predicate to justify such a review. He did not do so. The trial court did not err in quashing the subpoenas *duces tecum* without conducting an *in camera* inspection of the requested records. Defendant's first point is denied.

■ In his second point, defendant challenges the admission into evidence of drawings and two letters the victim wrote to her mother almost two years after the occurrence of the sexual offenses. Prior to trial, defendant filed a motion in limine seeking to exclude the letters and drawings from evidence. The court overruled the motion. During direct examination of the victim, the State, over defendant's objection, introduced the letters and drawings into evidence and the victim read the letters in their entirety and gave a detailed description of the drawings. The jury took the letters and drawings to their deliberations.

Defendant argues the letters and drawings were used to improperly bolster the victim's testimony. The State contends the letters and drawings were admissible because they demonstrated the victim's state of mind some time after the sexual offenses occurred.

The April 1994 letter read as follows:

I just want to die. Why did it have to happen to me. I hate my life. I'm so ugly. I'm fat. I wish I was skinny. I wonder if my life would be different if I was skinny. It probably would be if I finally got a boyfriend, but I bet as soon as he sees me he'll run because I'm so ugly.

His name is Andrew but my best friend Courtney says that he thinks—she thinks we'll make a good couple. And another one of my best friends also says that he will still like me.

I still—actually I know I'm fat and ugly. He also says that he doesn't judge a girl by their looks.

But by the way they act, etcetera, but the way he was kind of talking sounded like, I hope she's not fat. I just hope, I hope he will still like me.

The April letter also had a second page containing several drawings. The victim identified two of the figures as defendant and herself. The victim described the drawings to the jury and read the words she had written next to the figure of defendant.

Will, f—king bastard, I hate you. Thanks for ruining my life. You've done stuff and stuff coming out of my clothes. I take off your clothes and I drew a bag. It's like a bag full of dirty movies. Out of my mouth, I hate you, I want to die.

The victim also read the June 1994 letter to the jury:

Mom, I can't live here. I'm sorry. I know you and [older brother] are probably going to go like, yes, she's leaving. I hope you're happy. I live growing up knowing what happened to me when I was eleven or twelve. It's horrible, painful.

[Defendant] is a f—king bastard. I know it's my fault. He told me it was my fault, and he is—you guys sometimes act like it's my fault. Well, at least I feel that way. I just want to kill myself and mean it too. One of these days I'm just going to run away. By the time you realize and actually . . . call the cops, I will already kill myself and I will not have to go to a therapist anymore. I refuse to.

I've already tried to kill myself once, I'll do it again. I think if you have been sexually abused, killing yourself is better than living with the pains and memories.

I was told it was your fault. I hate Will and I hope he knows that he has ruined my life and I hope he is pretty damn proud of himself and I'm getting those pictures he took of me back and burning them up.

I don't know what I did to deserve what he did to me but I must have done something bad.

I'm sorry for all the problems I've cause to everybody. Mostly you and [older brother] . . . and [younger brother] and I love [younger brother]. I don't care if he is a—hole's son, I still love him. Tell [older brother] I love him too. I'm sorry for all the things I have done to him. I love you too and I'm sorry for all the trouble I've caused. . . .

■ The trial court is vested with broad discretion over questions concerning the rele-

vancy and admissibility of evidence. *Newton*, 925 S.W.2d at 472. Such discretion shall not be disturbed on appeal absent a clear abuse of discretion. *Id.*

■ Evidence of physical and psychological changes in the victim is relevant to prove the elements of the sexual offense itself and thus may be admitted to show the offense did in fact occur. *State v. Burke*, 719 S.W.2d 887, 889 (Mo.App.1986). Experts and laymen can testify about their observations. *Id.* "Common experience teaches us a sexual offense can cause behavioral and personality changes in the complainant." *Id.* at 890.

During cross-examination by defense counsel the victim's mother testified as to changes in the victim's behavior:

[DEFENSE COUNSEL]: Since then, even after [defendant] I mean, have you noticed that [the victim] would be as demanding of your time ... and of your attention, ma'am?

[MOTHER]: Sure, she is. . . .

* * * * * *

[DEFENSE COUNSEL]: Previous to the actual allegation of sexual abuse, she was demanding of your time?

[MOTHER]: Not very demanding. She was a typical little girl, is what I would consider her.

[DEFENSE COUNSEL]: Isn't it a fact, ma'am, that your daughter has done things to try to sabotage your relationship with other men?

* * * * * *

[MOTHER]: Yeah, but I think it really stems from a fear of another man being in the house and her being afraid this is going to happen again.

In addition, the mother testified that in March 1995 the victim attempted suicide and was taken to the hospital when she remained agitated. There the victim told the social worker about the sexual contact with defendant during the summer of 1993. All of this evidence was admitted without objection and was admissible under *Burke* as evidence of changes in the victim's personality and behavior.

The letters and drawings were admissible as further evidence of the psychological changes in the victim almost two years after the sexual abuse by defendant. The jury reasonably could have concluded that the writings reflected the victim's feelings of self-loathing and of low self-esteem as she grappled with her inability to function as a young woman because of the acts to which she had been subjected by defendant. Such emotions are consistent with a female who was sexually abused as a child and who, as she matures, becomes increasingly aware of the damage she has suffered as a result of that abuse. The letters and drawings were relevant under *Burke*.

■ Defendant asserts the letters and drawings constituted inadmissible hearsay. A hearsay statement is any out-of-court statement used to prove the truth of the matter asserted. *Parker*, 886 S.W.2d at 925. The challenged letters and drawings were offered not for the truth of the matter asserted, but to show the victim's state of mind after the sexual abuse by defendant and prior to her revealing the abuse by defendant. *See id.* (testimony by the victim's friend about statements made by murder victim about one week before the murder about her being afraid of the accused were not hearsay because they were offered to show her state of mind).

■ Defendant next contends that the letters and drawings constituted improper bolstering of the victim's testimony and relies on *State v. Cole*, 867 S.W.2d 685 (Mo.App. E.D.1993). This case, however, is distinguishable from *Cole*. *Cole* involved the court's permitting the taped statement of a witness to be played at trial, despite the taped statement being wholly duplicative of the witness's in-court testimony. *Id.* at 686. Here, in contrast, the letters and drawings were not wholly duplicative of the victim's testimony at trial. The victim testified in detail at trial about the sexual acts committed by defendant. The letters did not reiterate that testimony. Rather, the letters and drawings provided additional information as to the victim's mental state after the sexual offenses. If the evidence bolstered the victim's testimony, it was only to the extent that emotion-

al problems can be the result of child sexual abuse. *See State v. Ogle,* 668 S.W.2d 138, 144 (Mo.App.1984) (same can be said of the emotional problems caused by rape).

■■■ As to the fact that the letters were written and the drawings made almost two years after the sexual abuse, remoteness in time ordinarily affects the weight rather than the admissibility of evidence. *See Ogle,* 668 S.W.2d at 142. Whether the evidence is inadmissible because it is too remote in time is a matter resting largely in the sound discretion of the trial court. *Id.* We recognized that letters and drawings made so long after the alleged incidents can be fabricated, but whether they were in this instance was a credibility issue for the jury. *See id.* at 142.

The trial court did not abuse its discretion in admitting the letters and drawings into evidence. Defendant's second point is denied.

■■■ In his third point, defendant contends the trial court erred in sustaining the State's motion in limine to exclude evidence that the victim's father had been accused of sexually abusing his stepdaughter. Defendant argues that the victim's and her mother's knowledge of previous allegations of sexual acts and of the negative impact of such allegations on the accused "bear heavily on the credibility of the victim and her mother."

■■■ A ruling in limine is interlocutory only and is subject to change during the course of the trial. *State v. Purlee,* 839 S.W.2d 584, 592 (Mo. banc 1992). The motion in limine, in and of itself, preserves nothing for appeal. *Id.* The proponent of the evidence must attempt to present the excluded evidence at trial, and if an objection to the proffered evidence is sustained, the proponent must then make an offer of proof in order to preserve the matter for appellate review. *Id.; State v. Fleer,* 851 S.W.2d 582, 595 (Mo.App. E.D.1993). An offer of proof must demonstrate the relevance of the testimony offered, must be specific, and must be definite. *Id.* Generally, an offer of proof entails questions to a witness on the stand. *Id.*

Here, defendant did not make an offer of proof as to what the victim's testimony would be, but merely gave a listing of what questions he wanted to ask the victim. This did not constitute a specific and definite offer of proof. As to the victim's mother, during cross-examination defense counsel's offer of proof was limited to a statement that the victim's mother knew that her ex-husband had been arrested for sexual abuse. This offer of proof was not sufficient to demonstrate the specific and definite relevance of the proffered evidence. Defendant preserved nothing for appellate review. Defendant's third point is denied.

■■■ In his fourth point, defendant charges error in the trial court's denying defense counsel the opportunity to argue an adverse inference from the State's failure to call the victim's brother as a witness, because he allegedly was an "eyewitness" to the sexual abuse by defendant.

■■■ If the State fails to call a witness at trial who could reasonably be expected to testify in the State's favor, the defendant may comment on the State's failure to do so. *See State v. Long,* 925 S.W.2d 220, 223 (Mo. App. E.D.1996). " 'If a witness can be expected to testify favorably to a party, he is peculiarly available to that party, and the failure to call that witness gives rise to the inference that his testimony would actually have been unfavorable rather than favorable.' " *Id.* (quoting *State v. Robinson,* 752 S.W.2d 949, 953 (Mo.App.1988)).

The record does not support defendant's contention that he was prohibited from arguing an adverse inference from the State's failure to call the victim's brother to testify. At trial, defense counsel argued the inference as follows:

[DEFENSE COUNSEL]: ... Now, the other thing that you need to think about is this is one of the only incidents where there is ... a second witness.

On every other incident we have one witness. Finally, we have a second witness to corroborate what went on. The witness that lives with [the victim] every day. Still lives with her every day.

Now, did the State of Missouri call that witness?

[Trial court overruled State's objection.]

[DEFENSE COUNSEL]: Did the State of Missouri call that witness? No, they didn't. They have the burden of proof in this case. It's their job to prove this case beyond a reasonable doubt. Why not? Why didn't they call that witness?

[Trial court overruled State's objection.]

[DEFENSE COUNSEL]: The reason they did not call him, you can infer the legal reason they did not call in her brother—

[PROSECUTOR]: He can not make that statement. The witness is an equally available witness.

THE COURT: Sustained.

This was the only instance of the court's sustaining the State's objection to defense counsel's argument about the absence of the victim's brother. After sustaining that objection, the court permitted defense counsel to continue to argue the inference from the State's failure to call the victim's brother and overruled two more of the State's objections to similar arguments by defense counsel. The court properly limited defendant's closing argument to drawing the adverse inference and not to arguing legal conclusions to the jury. The court did not abuse its broad discretion in limiting closing argument in that respect. Defendant's fourth point is denied.

In defendant's fifth point, he contends the trial court erred in refusing to instruct the jury on defendant's failure to testify *after* the jury had retired to deliberate. In his sixth point, he asserts the trial court committed plain error in giving the jury the so-called "hammer" instruction when they indicated they were deadlocked. *See* MAI–CR 3d 312.20. We have reviewed these points on appeal and find that no jurisprudential purpose would be served by a written opinion. Points five and six are denied pursuant to Rule 30.25(b).

The judgment of the trial court is affirmed.

AHRENS, C.J., and CHARLES B. BLACKMAR, Senior Judge, concur.